**WALLING, Administrator of Wage and Hour Division of the United States Department of Labor, v. T. BUETTNER & CO.**

No. 8132.

Circuit Court of Appeals, Seventh Circuit.

Feb. 11, 1943.

Moses, Kennedy, Stein & Bachrach, of Chicago, Ill. (Herbert H. Kennedy and Robert C. Kelso, both of Chicago, Ill., of counsel), for appellant.

Irving J. Levy and B. Margolin, U. S Department of Labor, both of Washington, D. C., Frank J. Delany, of Chicago, Ill., and Herman Marx and Anna Faye Blackburn, U. S. Department of Labor, both of Washington, D. C., for appellee.

Before MAJOR and MINTON, Circuit Judges, and LINDLEY, District Judge.

MINTON, Circuit Judge.

This is a suit by the Administrator of the Wage and Hour Division of the Department of Labor, as administrator of the Fair Labor Standards Act, and pursu-

---

[2] South Chicago Coal & Dock Co. v. Bassett, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732.

ant to Section 17 thereof, to enjoin the defendant-appellant, T. Buettner and Company, from the violation of Sections 15(a) (1), 15(a) (2) and 15(a) (5) of the Act. 29 U.S.C.A. § 215.

The defendant is engaged in the sale of patterns for various kinds of needlework and the threads for making the pieces according to the patterns. In order to show the trade how the pieces would look after they were made up, sample pieces were provided by the defendant. These pieces were executed by various people in their homes, in accordance with specifications furnished by the defendant, for a price and within a time fixed by the defendant. The samples and directions were usually sent to the workers through the mail and returned by the same method when completed. This had been the defendant's practice for many years prior to October 24, 1938 when the Fair Labor Standards Act went into effect.

It is admitted that the remuneration paid did not meet the standards of the Act, nor did the defendant keep its records in accordance with the regulations promulgated by the Administrator.

When the Act went into effect the defendant promptly consulted its attorney to ascertain whether or not it was within the provisions of the Act in its relationship with the so-called homeworkers. The defendant's attorney advised it that it did not come within the Act in that its so-called homeworkers were independent contractors. The Administrator had taken no position by regulation or otherwise on this relationship.

On April 16, 1941 the plaintiff-appellee sent investigators to the defendant's place of business to investigate its records in order to ascertain whether or not the defendant was complying with the Act. The defendant cooperated fully. After inspection and investigation, the plaintiff advised the defendant for the first time on April 16, 1941 that the so-called homeworkers were its employees within the meaning of the Act, and subject to its standards. The defendant on April 23, 1941 in good faith completely discontinued the use of homeworkers and has never resumed their use; and its responsible officers testified, and they are undisputed, that the defendant has no intention of resuming its abandoned old practice.

As further evidence of its good faith, the defendant on May 1, 1941 set up an organization of workers to execute these samples in its place of business in Chicago. The defendant paid the workers 37½¢ an hour, the scale prescribed by the Administrator for that kind of work, and has ever since continued to do so. The defendant has kept the records thereof as required by the Administrator's regulations.

This suit was brought on July 14, 1941, eighty-one days after the defendant had in good faith abandoned its old practice which it had been advised was in violation of the Act. There was no evidence, and consequently no finding by the trial court, that the defendant was violating the Act at the time the suit was brought, or that it then intended to violate or was threatening to violate the Act in the future.

The question with which we are presented at the very beginning is whether under such circumstances the plaintiff was entitled to an injunction. The statute, Section 17, 29 U.S.C.A. Section 217, authorizes an injunction, " * * * for cause shown * * *." We think this means such a cause as would move a court of equity to protect the employees against future violations or threats to violate. That it contemplates the usual equity proceeding is made further evident by the provision in Section 17 for the usual notices given to obtain restraining orders and preliminary injunctions. The preceding Section 16 provides a criminal penalty for wilful violations of the Act, and gives the employees a right to sue to recover any unpaid minimum wages or overtime pay, with an equal additional sum as liquidated damages.

Thus, Section 16 of the Act provides sanctions for past violations, while Section 17 looks to the future, to provide an injunction to prevent any purpose to violate the Act in the future. The trial court did not find that purpose present in the instant case. In fact, it could not. The only evidence on that score was that the old practice, deemed by the Department to violate the Act, had been abandoned eighty-one days before the suit was brought, and the responsible officers of the defendant had testified that they had no intention of returning to their abandoned old practice. They were conforming to the law's requirements, and were well-

satisfied to continue to do so. A court of equity will not afford an injunction to prevent in the future that which in good faith has been discontinued before the suit for injunction was brought, and where there is no evidence that the offense is likely to be repeated in the future. Courts of equity are not to be used to punish past offenses, but only in a proper case to prevent wrongdoing in the future. United States v. United States Steel Corporation, 251 U.S. 417, 445, 40 S.Ct. 293, 64 L.Ed. 343, 8 A.L.R. 1121; Shore v. United States, 7 Cir., 282 F. 857, 859; Securities and Exchange Commission v. Torr, 2 Cir., 87 F.2d 446; Fleming v. Phipps, D.C., 35 F.Supp. 627; Fleming v. National Bank of Commerce, D.C., 41 F.Supp. 833. The remedy is never afforded on suspicion or on the ungrounded fear that the offense may be repeated in the future. When advised by the Department that it was engaged in a practice the Department considered a violation of the Act, the defendant promptly abandoned it and established a practice that fairly and in good faith met the standards of the Act, and has in good faith lived up to the latter practice ever since. Employers who are acting in good faith and endeavoring to comply with the law should not be harassed by the processes of a court of equity coercing them to do what they are willing to do and are trying to do voluntarily. Equity will promptly respond to meet a violation or a threatened violation, and it will as emphatically refuse its aid where none is made to appear.

█ The defendant acted in good faith. It did not wilfully violate the Act, nor assume a defiant, intransigent attitude. It was wholly cooperative, and sought in good faith from the beginning to ascertain whether or not it came within the purview of the Act. It was first advised that it did not. Whether it did or not was not free from doubt. When advised that it did come within the Act, it just as promptly, and with the utmost good faith, abandoned its old practice, set up a practice wholly in conformity with the Act, declared its satisfaction therewith, and disavowed a purpose to revert to its old practice. Under these circumstances, the trial court was not authorized to grant an injunction.

The judgment of the trial court is reversed, with instructions to dismiss the complaint.