James P. MITCHELL, Secretary of Labor,
United States Department of Labor,
Plaintiff,

v.

MILLER AND COMPANY, Inc., and K. C.
Haughton, Defendants.

Civ. A. No. 2018.

United States District Court
S. D. Alabama,
Northern Division.

Dec. 7, 1959.

Beverley R. Worrell, Regional Atty., U. S. Dept. of Labor, Birmingham, Ala., by M. J. Parmenter and R. S. Haslam, Birmingham, Ala., for plaintiff.

Walter P. Gewin, LeMaistre, Clement & Gewin, Tuscaloosa, Ala., for defendants.

DANIEL HOLCOMBE THOMAS, District Judge.

The plaintiff brings this action to enjoin the defendants from violating the provisions of Sections 15(a) (1), 15(a) (2), and 15(a)(5) of the Fair Labor Standards Act of 1938, as amended.[1] Violations are alleged to have occurred in the cases of nine employees.

Findings of Fact

1. The defendant Miller and Company, Inc., hereinafter referred to as the Company, is a corporation existing under the laws of the State of Tennessee, and is licensed to do business in the State of Alabama, having its principal place of business in Selma, Alabama. The Company is engaged in the manufacture, sale, and distribution of lumber and hardwood flooring. There is no question but that these goods move in interstate as well as foreign commerce. The alleged violations occurred at the Selma plant, which has approximately 200 employees. K. C. Haughton, codefendant herein, is the purchasing agent and personnel manager of the Company. Among his other duties, it is his responsibility to see that there is compliance with labor laws.

2. At the time the minimum wage was raised from 75¢ to $1 an hour, the defendant was employing several disabled employees. These employees had been with the Company for a number of years and the Company did not want to turn them out in the cold, but was fearful that it could not retain them due to the fact that their earning capacity was below minimum wage standards. It was

1. 29 U.S.C.A. § 215(a) (1, 2, 5).

at this time that the Company took what it believed to be the proper steps in order to apply for handicapped workers' certificates for these employees. Mr. M. B. Allen, an experienced labor consultant, was employed by the defendant. He advised the personnel manager, Haughton, that he would secure the necessary applications for the handicapped workers' certificates, and upon completion of the application forms, would forward them to the Regional Office of the Wage and Hour Division in Birmingham, Alabama. These application forms were obtained and completed for six of the employees named in this proceeding. Thus completed, the application forms were returned to Allen, but they never reached the office of the Wage and Hour Division. Meanwhile, the Company, acting in good faith upon the assumption that the applications had been accepted, proceeded to pay the six employees 75¢ an hour during the period between March 1, 1956, and the present.[2]

3. The alleged violations as to the other three employees involve:

(1) An employee who came to the business to learn its procedure and operation and was placed on the payroll at a fixed salary with discretionary working hours. It was the understanding of the Company and the employee that he was to remain in this training status until he had acquired enough knowledge to justify his being placed in a definite position with the Company. This employee worked and observed on his own working hour schedule, working or not as he saw fit.[3]

(2) Another employee was given a special bonus each week for his experience value to the Company. No mention of this fact was made to the other employees in a like position, but there were records kept of the bonus payments.

Haughton's testimony revealed that the payment was given as a reward for the particular output of this employee, and was not considered a part of his salary. The alleged violation as to this employee is the failure to pay some $48 in overtime on the special bonuses paid over the two-year period in question.

(3) The final employee as to whom there is an alleged violation of the Act, was a janitor who cleaned up the Company's offices. He received $33 per week for thirty-three hours' work each week. Sometimes the amount of wages and the hours worked varied. This janitor also worked for various other businesses, performing janitorial services. The plaintiff alleges that no records of daily or total weekly hours were kept on this employee.

4. The evidence overwhelmingly shows that no employee was dissatisfied with his salary. No complaint had been made to either the Wage and Hour Investigator or to the employer. The employer has at all times endeavored to provide adequate employment for all of its old employees who have passed the prime working years of life, and in many instances has paid sums of money to them after they have been forced to discontinue working. The improper procedure as to the disability certificates has been corrected.

5. There have been seven investigations made of the Company since 1941, and the evidence shows that the defendant has made every effort to comply with the recommendations made by the investigators. The investigators have at all times been treated with courtesy and given every assistance, and there has been an earnest effort on behalf of the Company to comply with all regulations and correct all irregularities brought to its attention.

---

2. It should be indicated that at least one of these six employees is now deceased and others have ceased to be physically able to carry on their limited duties at the defendant company. Four of the employees appeared in court and there is no question as to their obvious disability through either age or ill health.

3. The amount of money allegedly due this employee over the two-year period in question amounted to approximately $15.

6. Only the irregularities having to do with the above-mentioned nine employees are questioned in this action for injunction. It would serve no useful purpose to review the infractions discovered on previous occasions, inasmuch as these have been eliminated through corrective measures by the Company.

### Conclusions of Law

There is no question as to the authority of the Secretary of Labor, acting through the Wage and Hour Division of the Labor Department, to bring an action *for cause* to restrain violations of Section 15 of the Fair Labor Standards Act. But in the process of enforcing the provisions of the Act, the primary purpose for which it was designed [4] should not be lost to view in an overzealous endeavor to bring into a court of equity *every past minor infraction* of the rules. The Company here has made every effort to comply with the recommendations and suggestions of the Wage and Hour Division, and has taken steps to eliminate the discrepancies indicated by the investigating officers. The evidence shows that corrections have been immediately made, and the Company is endeavoring to comply with the law.

■ Perhaps the decision of Walling v. T. Buettner & Co., 7 Cir., 1943, 133 F.2d 306, best expresses the thoughts of this court in the instant case. There Judge Minton said:

"A court of equity will not afford an injunction to prevent in the future that which in good faith has been discontinued before the suit for injunction was brought, and where there is no evidence that the offense is likely to be repeated in the future. Courts of equity are not to be used to punish past offenses, but only in a proper case to prevent wrongdoing in the future. [Citing cases.] The remedy is never afforded on suspicion or on the ungrounded fear that the offense may be repeated in the future. * * * Employers who are acting in good faith and endeavoring to comply with the law should not be harassed by the processes of a court of equity coercing them to do what they are willing to do and are trying to do voluntarily. Equity will promptly respond to meet a violation or a threatened violation, and it will as emphatically refuse its aid where none is made to appear." 133 F.2d 306, at page 308.[5]

■ This case has been disposed of so far as this Court is concerned, and the injunction will not issue. However, it should be emphasized that this Court is of the opinion that this case should never have been filed. The government has gone to considerable expense in convening the court and bringing witnesses from distant places, not to mention the attendant inconvenience to all parties concerned. This expense and inconvenience was caused by the seeking of an injunction against a company which has attempted to give aged and disabled employees an opportunity to earn a livelihood in the twilight of life, and which, in so far as this Court has been able to determine has acted in absolute good faith in all of its dealings with its employees, as well as with the Wage and Hour Division of the Department of Labor.

This is not to imply that the Wage and Hour Division does not serve a useful purpose in seeing that the provisions of the Fair Labor Standards Act are complied with in meritorious cases.

Petition denied.

---

4. 29 U.S.C.A. § 202.

5. To this same effect see also: McComb v. Goldblatt Bros., 166 F.2d 387; Walling v. Gonzalez, D.C.1946, 67 F.Supp. 518; Walling v. Clinchfield Coal Corporation, D.C.1946, 64 F.Supp. 347; Walling v. John J. Casale, Inc., D.C.1943, 51 F. Supp. 520; Mitchell v. Hodges Contracting Company, 5 Cir., 1956, 238 F. 2d 380.