279 So.2d 480

**CITY OF MONTGOMERY, a municipal corporation,**

**v.**

**BRENDLE FIRE EQUIPMENT, INC., a corp.**

**SC 65.**

Supreme Court of Alabama.

March 29, 1973.

Rehearing Denied July 5, 1973.

Drayton N. Hamilton, Joseph D. Phelps, Walter J. Knabe, Montgomery, for appellant.

Miller & Hoffmann and J. F. Lassiter, Montgomery, for appellee.

**218**

HEFLIN, Chief Justice.

This is an appeal from the Circuit Court of Montgomery County, in Equity, wherein an injunction in favor of the appellee-complainant Brendle Fire Equipment, Inc. (who may hereinafter be referred to as "Brendle") was entered.

On May 28, 1971, Brendle filed a bill in equity seeking injunctive relief with regard to competitive bid practices by the appellant-respondent ·City of Montgomery (who may hereinafter be referred to as "City" or "City of Montgomery"). The bill of complaint averred that the bid procedure on a firefighting ˙equipment bid was improper in that the solicitation to bid had not been posted on the bulletin board outside the purchasing office, no hour was announced for public opening of the bids, and the bids which were received were not sealed. In addition, the bill averred that the conflict of interest provisions of Title 55, § 508, Code of Alabama, 1940, as amended (Recompiled 1958–1971 Pocket Supplement), had been violated in that a member of the Board of Commissioners of the Housing Authority of the City of Montgomery was the President of, and had a financial interest in, Southeast Fire Equipment Company, Inc., one of the competitors in the bidding. However, neither Southeast Fire Equipment Company, Inc., nor its president, Willie F. Hamner, were made parties to the action.

The particular ꞌbid upon which Brendle bases its bill was for firefighting equipment—Scott Air Paks and reserve tanks—purchased on August 31, 1970 under order number 6998. Three bids were received by the ·City:˙ one from Brendle ($7,500.00), another from Southeast Fire Equipment Company ($7,605.00) and a third from Jack Cocke & Company, the successful low bidder ($7,245.95). Jack Cocke and Company was not made a party to the bill.

As to this particular transaction, Brendle's evidence tended to show, and the City's evidence did not contradict it, that the forms for soliciting bids were not used; that nothing was posted on the bulletin board giving notice of the bids; that when the bid came in from Jack Cocke & ·Company the other bids may have been open and subject to viewing by the bidder; and that there was no public opening at a designated time and place.

Brendle introduced evidence of past practices of the City which tended to show that the former had not received solicitations for bids from the latter, although Brendle had repeatedly requested such solicitations concerning firefighting equipment.

While the City does not contradict much of the evidence of past practices it did establish that following the retirement of a long-time employee of the Purchasing Department, changes were instituted ꞌby which bid forms were mailed to all persons that evidenced an interest in bidding; each bid form was posted on the bulletin board; bids were publicly opened in the Purchasing Department office at 11:00 a. m. on the announced date; and bid forms reflected the time that the bids would be opened. Further, the City Commission on February 1, 1972 passed a resolution requiring that all bids for purchases in excess of $500.00 would be opened and awarded in Commission meetings. Since the passage of such resolution by the City Commission there was testimony that all ·such bids had been opened in regular ·Commission meetings in

the presence of the Commissioners at 11:00 a. m. on Tuesday of each week.

Mr. Harold Wallace Brendle, the President of Brendle (Brendle Fire Equipment, Inc.—the appellee-complainant) testified in substance that after the new city administration had gone into office he was allowed to bid on all purchases in which he indicated an interest. He stated that his "complaint about what had happened was before Mayor Robinson took office". While the bid procedure had changed, he, nevertheless, had no assurance that such illegal former practices would not be continued in the future.

The trial court granted the relief prayed for by Brendle in the following language:

"It is, therefore, ORDERED, ADJUDGED CONSIDERED and DECREED by the Court as follows:

"(1) That the respondent be and hereby is enjoined from executing any contract entered into in violation of the provisions of Title 55, Sections 506–517, Code of Alabama, as amended.

"(2) That the respondent be and hereby is enjoined from receiving bids pursuant to Title 55, Sections 506–517, Code of Alabama, as amended, from any member of the Board of Commissioners of the Housing Authority of the City of Montgomery or from any entity in which such member would have an interest or an ownership therein.

"   .   .   .".

█ It is from this decree that appeal was taken. The City had interposed a demurrer to the bill on the ground that there was no equity in the bill, which demurrer was overruled by the lower court. This ruling has been assigned as error. This state has long recognized the rule that a bill is not without equity if one aspect of the bill contains equity. Raleigh Realty Co. v. Lagomarsino, 237 Ala. 315, 186 So. 692 (1939) ; Bradford v. Fletcher, 248 Ala. 483, 28 So.2d 313 (1946) ; Taylor v. Jones,

280 Ala. 329, 194 So.2d 80 (1967). This requires an examination of the bill so as to determine its aspects.

The first aspect concerns a conflict of interests revolving around Willie F. Hamner, the President of Southeast Fire Equipment Company, who unsuccessfully submitted a bid on the equipment purchased by the appellant-respondent, which bid was considered by the latter. At the time Hamner submitted the bid for Southeast Fire he was a member of the Board of Commissioners of the Housing Authority of the City of Montgomery, and held a financial interest in Southeast Fire. This aspect of the bill of complaint refers to Title 55, § 508, Code of Alabama, 1940, as amended (Recompiled 1958—Pocket Supplement).

In the other aspect of its bill Brendle charges the City of Montgomery with violating Title 55, section 511, Code of Alabama, 1940, as amended (Recompiled 1958–1971 Pocket Supplement), which provides as follows:

§ 511. *Advertisement for and solicitation of bids; bids to be sealed; how opened; bids and documents to be public records; what purchases or contracts may be made in open market.*—All proposed purchases in excess of five hundred dollars ($500.00) shall be advertised by *posting notice thereof on a bulletin board* maintained outside the purchasing office and in any other manner and for such lengths of time as may be determined, provided, however, that *sealed bids* shall also be solicited by sending notice by mail to all persons, firms, or corporations who have filed a request in writing that they be listed for solicitation on bids for such particular items as are set forth in such request. If any person, firm, or corporation whose name is listed fails to respond to any solicitation for bids, after the receipt of three such solicitations, such listing may be cancelled. All bids shall be *sealed when received*, shall be *opened in public* at the *hour stated* in the

notice, and all original bids together with all documents pertaining to the award of the contract shall be retained and made a part of a permanent file or records, and shall be open to public inspection. If the purchase or contract will involve an amount of five hundred dollars ($500.00) or less, the purchases or contracts may be made upon the basis of sealed bids or in the open market. No purchase or contract involving an amount in excess of five hundred dollars ($500.00) shall be divided into parts involving amounts of five hundred dollars ($500.00) or less for the purpose of avoiding the requirements of this chapter. All such partial contracts involving five hundred dollars ($500.00) or less shall be void. (1967, Ex.Sess., p. 262, § 6, effective July 1, 1967.)" (Emphasis supplied).

Brendle's bill of complaint alleges that "no notice of the proposed purchase was posted on a bulletin board maintained outside the purchasing office, no hour for public opening of the bids concerned was advertised, the said bids were not sealed in conformity with the required procedure, and there was no public opening of said bids".

The attention of this court is first directed to that aspect of the bill in which Brendle charges a violation of Title 55, section 511, supra. Brendle sought and was granted an injunction under Title 55, section 515, Code of Alabama, 1940, as amended (Recompiled 1958–1971 Pocket Supplement), which provides for suit to enjoin the execution of a contract made in violation of Chapter 22 (under which Section 511, as well as Section 508 are grouped) as follows:

"Any taxpayer of the area within the jurisdiction of the awarding authority, and any bona fide unsuccessful bidder on a particular contract shall be empowered to bring a suit in equity in the appropriate court to enjoin execution of any contract entered into in violation of the provisions of this chapter."

The parties have not cited, and this court has been unable to find, any reported case construing section 515 and the parties to the case at bar have presented conflicting interpretations of this section

The City interprets this section as providing for injunctive relief only where a particular contract violative of Chapter 22 is attacked. It reasons that because Brendle is not seeking to enjoin the execution of any particular contract in the case at bar, but rather seeks an injunction preventing future contracts of such a nature as would violate said chapter, section 515 can be of no aid to Brendle and thus, a bill for such injunctive relief is without equity.

■■■ This court finds the language of section 515 to be unambiguous, and under such circumstances the "expressed intent must be given effect, and there is no room for construction". Alabama Industrial Bank v. State, 286 Ala. 59, 237 So.2d 108 (1970); Ex parte Bozeman, 183 Ala. 91, 63 So. 201 (1913); Kimbrell v. State, 272 Ala. 419, 132 So.2d 132 (1961). Under the statutory language it appears that the City's interpretation is correct. The statute makes available the equitable remedy of an injunction on a "particular contract". This wording does not comtemplate enjoining future contractual arrangements. Also, the statute provides for enjoining the *"execution"* of any contract which is violative of Chapter 22, not the formation of contracts to be made in the future which may run afoul of Chapter 22. To interpret the statute as Brendle suggests would unduly strain the construction of unambiguous language and provide a remedy not intended by the legislature.

It necessarily follows that the aspect of Brendle's bill under which it charges the City with violating the provisions of section 511 may not be used as a basis for granting an injunction under section 515 as to future contracts, as such is not authorized by section 515.

The bill avers that Title 55, section 508, supra, has been violated in that Southeast

Fire Equipment Company submitted a bid on the equipment purchased under order number 6998, which was considered by the City, and at the time of submitting the bid, the President of said company, Willie F. Hamner, was a member of the Board of Commissioners of the Housing Authority of the City of Montgomery.

Title 55, section 508 provides as follows:

"§ 508. *Conflict of interest; penalties for violation of chapter.* No member or officer of the said state trade schools, state junior colleges, state colleges and universities under the supervision and control of the state board of education, the city and county boards of education, the county boards of revenue or other similar county governing bodies, and the governing bodies of the municipalities of the state, and the governing boards of instrumentalities of counties and municipalities, including waterworks boards, sewer boards, gas boards, and other like utility board and commissions, shall be financially interested, or have any personal beneficial interest, either directly or indirectly in the purchase of or contract of any personal property or contractual service."

This language prohibits members of "the governing boards of instrumentalities of . . . municipalities", from having any financial interest in the "purchase of or contract of any personal property or contractual service". Section 508 prohibits members and officers of many other governmental entities and instrumentalities from having similar interests. However, this section is silent as to whether a member or officer of any of the listed governmental entities or instrumentalities is prohibited from having such an interest in all of the listed governmental entities and instrumentalities or any group of them, or whether the prohibition applies only to the entity or instrumentality of which such person is a member or officer.

The lower court found that Hamner, as a member of the Board of Commissioners of the Housing Authority of the City of Montgomery, was "a member of a governing board of an instrumentality of a municipality", and enjoined the City of Montgomery "from receiving bids pursuant to Title 55, §§ 506–517, Code of Alabama, as amended, from any member of the Housing Authority of the City of Montgomery or from any entity in which such member would have an interest or an ownership therein". This decree of the lower court held in substance that the prohibition against such interests included all of the entities and instrumentalities listed in said section 508.

The City has raised questions concerning the lower court's construction and interpretation of Section 508. It argues that to follow the construction given by the lower court would lead to absurd results which the legislature neither contemplated nor intended. For example, such construction would preclude the City from receiving a bid from a hospital insurance company in connection with an insurance contract of medical care for members of the Fire Department where one or more shares of stock in the hospital insurance company were owned by a member of the Library Board. Such construction further would prevent the Park and Recreation Board from purchasing fencing for a tennis court if a member of the Water Works & Sanitary Sewer Board owned stock in a successful bidding fence company.

In Trailway Oil Company v. City of Mobile, 271 Ala. 218, 122 So.2d 757 (1960), where statutory construction was an issue, this court stated a sensible construction should be given to a statute and any general terms appearing in the statute should be limited in their application so as not to lead to absurd consequences.

In establishing the language contained in Section 508 the legislature endeavored to prevent members of governing bodies from having any conflict of interests pertaining to the purchase of, or contract for, any personal or contractual service. The

matter of conflict of interests has troubled mankind for many years. The former dean of Stanford Law School succinctly recites the danger of a conflict of interests with the following words:

"Mankind has known for some time that a public official's moral perception may become blurred if his personal economic interest comes into conflict with his governmental responsibilities." Bayliss, Manning, The Purity Potlatch: An Essay on Conflicts of Interest, American Government, and Moral Escalation. Federal Bar Journal, Vol. 24, No. 2, Spring 1964.

Justice Coleman (grandfather of our present Justice Coleman) warns of the danger of a conflict of interests in Decatur Mineral Land Co. v. Palm, 113 Ala. 531, 537, 21 So. 315, 317 (1896) when he states "the frailty of human nature sacrifices duty to self-interest". Chief Judge Pound, in Elco Shoe Manufacturers, Inc. v. Sisk, 260 N.Y. 100, 183 N.E. 191, states that "no man can serve two masters with equal fidelity when rival interests come into existence."

Obviously, the intent of the legislature was to prevent a conflict of interests so that no member of a governing board would endeavor to give favorable treatment to businesses in which he would be financially or beneficially interested in connection with purchases of personal property or a contractual service. The servant with whom we are concerned under Section 508 in the instant case is Mr. Hamner and his two masters are the Housing Authority of the City of Montgomery and Southeast Fire Equipment Company, Inc. The Housing Authority is not in any way involved in the contract for the firefighting equipment on which Southeast Fire unsuccessfully entered a bid and, therefore, there are no rival interests. While Mr. Hamner does have two masters, there is no conflict between the two. In nowise was Mr. Hamner exercising a decision-making function that could be influenced by any financial interest or personal beneficial interest in connection with the firefighting equipment in this case.

■ ■ The foregoing considerations have led this court to the conclusion that Title 55, section 508, supra, was intended to prohibit successful bidding by a member of a governing board of an instrumentality of a municipality and by business entities in which he has an interest, if such member will have a financial or beneficial interest, either directly or indirectly, in the award contract where such member will be or can be involved in the decision-making procedure as to who will receive the award contract. The instant controversy is not such a case and Brendle is not entitled to an injunction prohibiting the City of Montgomery from receiving bids "from any member of the Board of Commissioners of the Housing Authority of the City of Montgomery or from any entity in which such member would have an interest or an ownership therein," as was granted by the lower court in part two of its decree.

The City further argues that Brendle seeks to determine Mr. Hamner's rights to submit bids to the City without making him a party. In a declaratory judgment action by a development corporation to enjoin the city from collecting taxes under an ordinance which required the city to reimburse the development corporation for sewer and water lines or to refrain from collecting city taxes in the area, this court held that the property owners were necessary parties and the failure to include those property owners in the original bill warranted reversal. In that same case, City of Mobile v. Gulf Development Co., 277 Ala. 431, 171 So.2d 247 (1965), this court found that the Water Board was a necessary party since the inference was that the Water Board was using the lines. For other examples of necessary parties see Tilley, Alabama Equity Pleading and Practice Annotated With Forms, Section 28.

In Boswell v. Boswell, 280 Ala. 53, 60, 189 So.2d 854, 861, the court stated:

"It is axiomatic that a man's rights should not be controverted in a court of justice unless he has full opportunity to appear and vindicate them. It is somewhat difficult to understand how one who was not a party to the suit can be bound by the decree."

█ Therefore, this court holds that Willie F. Hamner is a necessary party and should have been joined. The same would appear to be true in regard to Southeast Fire Equipment Co., Inc., a corporation, if the question had been raised.

As noted heretofore, that aspect of the bill in which Brendle asserted that Title 55, section 511 had been violated did not support an injunction under section 515 as the latter section does not authorize injunctive relief with respect to the formation of future contracts. The same controlling rationale would likewise be applicable for violations under Section 508 when an injunction is sought under Section 515. However, an injunction prohibiting the future formation of contracts violative of Section 511 as well as other sections under Chapter 22 can be warranted under general principles of equity.

Brendle has averred in its bill "that the complainant is a potential bidder for future proposed purchases and the probable future injury to the complainant cannot be compensated for in damages if the statutes hereinabove referred to would continue to be violated as hereinabove alleged; and that the complainant has no adequate remedy at law".

The court in Scofield v. Perry Creamery Co., 234 Ala. 560, 176 So. 195 (1937), stated that:

"In considering this question [whether to grant an injunction to prevent future injury to a complainant], the past course of conduct, with the continuance of like conditions, offering the same inducements and opportunities for such wrongful invasion of the rights of complainant, are quite pertinent".

The probability of future injury, as averred in the bill, if proved and based on reasonable current apprehensions, judged by the standards set out in *Scofield*, could justify injunctive relief under general principles of equity.

█ There was evidence in this case that any illegal bidding practices on the part of the City had been discontinued and that full compliance with the competitive bid law was practiced at the time testimony was taken. Mr. Brendle indicated that his complaints were not directed toward the new city administration. Since this case must be reversed and remanded, on the retrial of the cause the lower court should bear in mind that a court of equity should not grant an injunction to prevent in the future that which in good faith has been discontinued and where there is no evidence that the offense is likely to be repeated in the future. See Mitchell v. Miller & Co., 178 F.Supp. 776 (S.D.Ala.1959).

For the errors herein mentioned, the cause is reversed and remanded. Pending retrial the injunction is dissolved.

Reversed and remanded.

MERRILL, HARWOOD, MADDOX and FAULKNER, JJ., concur.