**URBAN SANITATION CORP., an Alabama corporation, Plaintiff,**

v.

**CITY OF PELL CITY, ALABAMA, a municipal corporation, et al., Defendants.**

**Civ. A. No. CV86–PT–0251–S.**

United States District Court, N.D. Alabama, S.D.

July 9, 1986.

J. Scott Greene, Bishop, Colvin & Johnson, Birmingham, Ala., for plaintiff.

Terry M. Cromer, Leeds, Ala., Billy L. Church, Pell City, Ala., James W. Porter, Porter, Porter & Hassinger, Birmingham, Ala., for defendants.

**MEMORANDUM OPINION**

PROPST, District Judge.

This cause comes on to be heard on various motions to dismiss converted to motions for summary judgment by order filed on May 29, 1986.

Early on it appeared to the court that this cause had all appearances of being either a pure breach of contract claim or a claim of a violation of a statutory duty for both of which state law would provide an adequate remedy. It occurred to the court that possibly, under such circumstances, no claim would be stated by virtue of the holding in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Plaintiff has convinced the court that the claim being one of denial of substantive due process, *Parratt* may not be applicable. *See,* however, *Rivers v. Campbell,* 791 F.2d 837 (11th Cir.1986), where the court stated:

> Therefore, even if school officials *deprived Rivers of a property right,* his section 1983 action is barred by *Parratt v. Taylor* because an adequate state remedy was provided to address the deprivation. (emphasis added).[1]

Without regard to the possible application of *Parratt,* it is first necessary that the court consider whether plaintiff had a property interest which was subject to deprivation. Plaintiff claims that it had such an interest resulting from an expectancy created by state law, municipal ordinance and the actions of defendants and the fact that the action taken was arbitrary and capricious.

In order to determine whether a property interest exists, this court must look to state law, rules, or understandings. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). In *Roth,* the court stated:

> Certain attributes of "property" interests protected by procedural due process emerge from these decisions. To have a property interest in a benefit, a person

---

1. *Rivers* may apply *Parratt* only to a procedural due process issue. If so, the application appears to be redundant. The law has always been that one who receives all the process due is not denied procedural due process.

clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.

Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.[2]

Plaintiff has argued that a property interest may result from a requirement that the defendants act in a non-arbitrary manner. Such an argument combines the cart with the horse. The first issue is what is property, the second, what is deprivation. If plaintiff had a property interest, whether or not the defendants acted arbitrarily would determine if the plaintiff was deprived of that interest without substantive due process of law. It does determine, however, whether plaintiff had a property interest subject to Constitutional protection. The issue of whether the action was arbitrary and capricious is applicable to a determination of whether the contract awarded may be enjoined as a violation of the competitive bid law as herein-after discussed.

Plaintiff's alleged property interest stems from the fact that defendants were required to comply with § 41–16–50(a)(1) Code of Alabama 1975 which provides, *inter alia,*

All *expenditure of funds* of whatever nature for labor, services or work ... made by or on behalf of ... the governing bodies of the municipalities of the State.... shall be under contractual agreement entered into by free and open competitive bidding, on sealed bids, *to the lowest responsible bidder.* (emphasis added).

Section 11–47–6(a) Code of Alabama 1975 provides:

The award of each contract for which bids have been submitted to a municipality shall be made to the lowest responsible bidder who may comply with such reasonable regulations as may be prescribed before the bids are called for. (See note 3 below).

An initial consideration of state law would appear to demonstrate that plaintiff had no property interest. In *Townsend v. McCall,* 262 Ala. 554, 80 So.2d 262 (1955), the Supreme Court of Alabama considered an earlier version of Alabama's competitive bid law. The Court stated:

The provision for letting the contract to the lowest responsible bidder is *for the benefit of the public* and does not confer on a bidder any right enforceable at law or in equity. *Carson Cadillac v. City of Birmingham* [232 Ala. 312, 167 So. 794 (1936)]; *American Smelting and Refining Co. v. United States,* 259 U.S. 75, 42 S.Ct. 420, 66 L.Ed. 833 (1922) ..., 43 Am Jur pp. 806, 807, Section 64, p. 969, Section 221.

80 So.2d at 265.[3]

Subsequent to *Townsend,* Alabama law has been amended to include the following provisions in § 41–16–31, Code of Alabama 1975:

Any taxpayer of the area within the jurisdiction of the awarding authority and any bona fide unsuccessful bidder on a particular contract shall be empowered

2. *See also Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976).

3. It should be noted that § 11–47–6(a) existed in its present form at the time of the *Townsend* decision. In *Carson,* the court stated:
The purpose of statutory or charter provisions requiring municipal corporations to let con-

tracts on competitive bidding after notice is to secure economy and *protect the citizens and taxpayers* of the municipality from fraudulent favoritism in letting contracts.
232 Ala. at 316, 167 So. 794 (emphasis added, citations omitted).

to bring a civil action *to enjoin execution of any contract* entered into in violation of the provisions of this article.

(emphasis added).

The Alabama statutory scheme and the type action it allows an unsuccessful bidder to bring follows the general law on the subject which recognizes that the purpose of competitive bid statutes is to protect the public rather than to provide an action for damages to unsuccessful bidders. In 64 Am Jur 2d, *Public Works and Contracts,* § 86, p. 948, consistent with *Townsend,* it is stated:

A bidder for public work cannot base a right of action for damages against the public body upon a statutory requirement that contracts for the performance of public work shall be let to the lowest bidder, and cannot recover lost profits in case the contract is, contrary to the statute, awarded to a higher bidder. Such a statutory provision, enacted as a protection to the public, cannot be used to make disobedience of its provisions by public officers a double source of punishment to the public body: if the low bidder is permitted to maintain such an action then this obedience of the statute would make the public body pay the difference between the lowest bid and the bid for which the contract was made, and also the profit that the lowest responsible bidder would have made if the statute had not been violated.

(Footnotes omitted).

It has also been generally recognized that, in the absence of statute, a mere disappointed bidder, as opposed to a taxpayer or citizen of the jurisdiction involved, has no standing to bring actions to forbid violations of competitive bid laws.[4] Again, consistent with *Townsend,* at 64 Am Jur 2d, § 88, p. 950, it is stated:

Neither does a bidder for public work, though he may be the lowest reliable and responsible one, have any such vested or absolute right to a compliance with bidding statutes as will entitle him to maintain an injunction against their violation by public officials.

(Footnote omitted).

 Of course, standing to bring actions *seeking injunctions against violations* of competitive bid laws may be granted to unsuccessful bidders by statute. Subsequent to *Townsend,* perhaps as a result of it, § 41–16–31 was adopted to provide this standing. There is no indication in this statute, however, that an unsuccessful bidder has any right or expectancy to insist upon the award of a contract. To the contrary, the statute is carefully crafted to limit the remedy to "enjoin[ing] execution of any contract entered into in violation of the provisions of this article." When the statute is unambiguous, its expressed intent must be given effect and there is no room for construction. *City of Montgomery v. Brendle Fire Equipment, Inc.,* 291 Ala. 216, 220, 279 So.2d 480 (1973) (considering § 41–16–1).[5] § 41–16–1 merely extends standing to seek protection of a *public interest* to unsuccessful bidders. It does not convert a public interest into a protected private interest.[6] No Alabama case has been cited to the court which has allowed a claim for damages by unsuccessful bidders.[7] In *International Telecommunications Systems v. State of Alabama,* 359 So.2d 364, 366 (Ala.1978), in referring to § 41–16–20 through 32 Code of Alabama 1975, the Supreme Court of Alabama stated, "The Competitive Bid Law does not require that the lowest bid be accepted...." In *Arrington v. Associated General Contractors,* 403 So.2d 893, 898 (Ala.1981), the Supreme Court of Alabama

---

**4.** Of course, a bidder who is also a citizen or taxpayer might have such a right in that capacity, if not in his capacity as a bidder.

**5.** "To interpret the statute as *Brendle* suggests would unduly strain the construction of unambiguous language and provide a remedy not intended by the legislature." *Id.* at 220, 279 S.2d 480.

**6.** Plaintiff cites *Black's Law Dictionary* for the proposition that "standing to sue" is synonymous with a protectable interest. Public interests as well as private interests are protectable.

**7.** *Cf. Kennedy v. City of Prichard,* 484 So.2d 432 (Ala.1986) where the remedy allowed was invalidation of an award and injunctive relief.

stated: "[w]e believe cases construing § 41-16-20 are instructive in the instant case [involving § 41-16-50]." That court, in apparent dicta, does also state that "§ 41-16-20, like § 41-16-50, requires that the contract be awarded to the lowest responsible bidder in open competitive bidding...." 403 So.2d at 898. No case is cited in support of this observation and it appears to be inconsistent with the holding in *International Telecommunications* if it is construed as requiring that the contract be awarded as opposed to forbidding an illegal award. Plaintiff's "unilateral expectation" is not sufficient to create a protected property interest.[8]

In *Housing Authority of Opelousas, La. v. Pittman Const. Co.*, 264 F.2d 695 (5th Cir.1959), the court recognized that, under Louisiana law, an unsuccessful bidder could sue to set aside the award when the contract was advertised to be let to the lowest responsible bidder. While jurisdiction in the case was based on diversity of citizenship and was decided under Louisiana law, it is pertinent with regard to whether a "benefit" was conferred on an unsuccessful bidder under similar law. While the court affirmed the trial court's judgment annulling the contract to another bidder, it also affirmed the trial court's refusal to award the contract to the plaintiff, the low bidder. Judge Wisdom stated:

> Pittman contends that the district court erred in not ordering the Housing Authority to award the contract to the plaintiff. Under the Public Works Law, and in accordance with the terms of the bid documents, the Housing Authority is authorized to award the contract to the lowest responsible bidder or to reject all bids and to readvertise for new bids. Moreover, a court should not compel a public body to make a discretionary award to a bidder not chosen by that body. State ex rel. *People's State Bank*

*v. Police Jury of Red River Parish*, 1923, 154 La. 389, 97 So. 584. Accordingly, the judgment of the district court is Affirmed.

264 F.2d at 704.

It should be noted that the Alabama statute does not require that the contract *be awarded* to the lowest responsible bidder. It only requires that *expenditures* must be made in compliance with the statute. While the court recognizes that the decision as to whether a property interest is created is, in the final analysis, one for this court, this court, of necessity, has to draw on state law. Regardless of whether such cases as *L & H Sanitation, Inc. v. Lake City Sanitation, Inc.*, 585 F. Supp. 120 (E.D.Ark.1984) are correct in determining that the law of the subject state is to be construed as conferring a private benefit, Alabama law does not.

*Roth, supra,* states that "The Fourteenth Amendment's procedural protection of property is a safeguard of the security interests that a person has already acquired in specific benefits." 408 U.S. at 576, 92 S.Ct. at 2708. "The Supreme Court has recognized that a statute *directing a state agency to confer a benefit under certain circumstances* may create sufficient interest in the benefit that some amount of due process protection must be afforded to ensure that the benefit is distributed as required...." (emphasis added). *Ward v. Downtown Development Authority*, 786 F.2d 1526, 1531 (11th Cir. 1986). Alabama law has not *directed* that a benefit be conferred, only that there be no expenditure of funds in violation of the statute. This court should not presume to create a right more expansive than state law. Plaintiff's claim is distinguishable from the claims of parties who have acquired status as employees, tenants, etc. Here there is no withdrawal of a benefit

---

8. In order to have a property interest within the protection of procedural due process, a person must have more than an abstract need or desire for a particular benefit. *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. While absence of a contractual right to employment does not preclude the existence of a property interest, plaintiff must show a mutually recognized

entitlement, as opposed to a unilateral expectation of a benefit, to establish the existence of a property interest. *Perry,* 408 U.S. at 602–03, 92 S.Ct. at 2700; *Winkler v. County of DeKalb,* 648 F.2d 411, 413–14 (5th Cir.1981). *Durham v. Jones,* 698 F. 1179, 1181 (11th Cir. 1983).

nor prescribed circumstances under which a benefit is directed to be conferred.[9]

■ Plaintiff relies heavily on *Three Rivers Cablevision, Inc. v. City of Pittsburgh*, 502 F.Supp. 1118 (W.D.Pa.1980) where the court concluded, after considering Pennsylvania law, that an unsuccessful bidder, the nature and source whose property interest was "difficult to precisely delineate" had a property interest of "relatively narrow dimension."[10] *Three Rivers* cites no other similar case as authority. The court, perhaps inappropriately, relied upon an extrapolation of a principle espoused in *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). The statutory requirements considered in *Greenholtz* are distinguishable from those applicable here. The Nebraska statute which provided the basis for a *liberty* expectation *mandated* release of inmates when certain circumstances were present.[11] Notwithstanding what may be the case under Pennsylvania law, Alabama law does not *mandate* an award of a contract under any circumstances. It merely prohibits expenditures contrary to law. The statute confers no more "benefit" on an unsuccessful bidder than it does on a taxpayer. The court respectfully disagrees with *Three Rivers* to the extent that it may suggest that all unsuccessful competitive bidders have a protected property interest, just as the court in *Three Rivers* disagreed with the holding in *Estey Corporation v. Matzke*, 431 F.Supp. 468 (N.D.Ill. 1976).[12] The court concludes that plaintiff does not have a constitutionally protected property interest resulting from state law. If the Alabama Legislature had intended to confer a benefit on unsuccessful bidders, it could have done so. This court cannot do, in a backhanded fashion, what the Alabama Legislature chose not to do.

Pell City's bid specifications stated: "The City of Pell City reserves the right to reject any or all bids." No reasonable expectancy creating a property interest results from this document. The court concludes that plaintiff had no protectable property interest resulting from any law or action. In the alternative, the court concludes that there is not sufficient evidence to create a reasonable inference that the action of the defendants was arbitrary and capricious. There is little, if any, evidence that the action was such; only conclusory allegations to that effect.[13]

In addition to claiming a denial of substantive due process, plaintiff also alleges a denial of equal protection of the laws. Plaintiff acknowledges that it does not rely upon being associated with any suspect classification subject to strict scrutiny nor

---

9. Statutes that provide that certain procedural guidelines be followed do not, on that basis alone, create a substantive interest protected by the Constitution. *Jean v. Nelson*, 727 F.2d 957, 981 (11th Cir.1984).

10. Approximately one month before *Three Rivers* was decided, the U.S. District Court for the Eastern District of Pennsylvania reached a contrary conclusion to that in *Three Rivers*. *See J.P. Mascaro & Sons, Inc. v. Township of Bristol*, 497 F.Supp. 625 (E.D.Pa.1980). That court stated that the Pennsylvania law requiring that the contract be awarded to the lowest responsible bidder is "solely for the protection of the taxpayer."

11. *Cf. Parks v. Watson*, 716 F.2d 646 (9th Cir. 1983) where the pertinent statute mandated an action if certain conditions were met. In *Littlefield v. Afton*, 785 F.2d 596 (8th Cir.1986), Minnesota law required issuance of a permit upon compliance with legal requirements.

12. *Three Rivers* does recognize, contrary to what plaintiff here argues, that there can be no property interest in procedure itself. 502 F.Supp. at 1128–1129. *See also United States v. Jiles*, 658 F.2d 194, 100 (3rd Cir.1981). *Three Rivers* also recognizes that the due process clause "is not a catch-all provision designed to promote the interest of society generally in the obedience of its laws." 502 F.Supp. at 1128.

13. Plaintiff may take the position that there has not been sufficient opportunity for discovery on this issue. Plaintiff should at least offer evidence which would have been sufficient to make at least a threshold Rule 11 analysis. If, in an application for rehearing, plaintiff, after careful consideration, suggests bona fide evidence of arbitrary and capricious conduct sufficient to satisfy an initial Rule 11 analysis, the court will remove this latter alternative conclusion, unless defendants advise the court that they would prefer to allow the discovery before the court makes a final decision. Such a revision would not affect the decision as to a lack of protected interest.

claim of a fundamental right. The equal protection claim and the substantive due process claim cannot be totally separated in their analysis. In the absence of a suspect classification or claimed fundamental right, it is difficult to determine what law or treatment has been unequally applied. The most that can be said is that the defendants did not view the competitive bid law as requiring that plaintiff be awarded the contract.

The uncontroverted evidence is that plaintiff was not awarded the contract because, *inter alia,* of a perceived concern that plaintiff was not a "responsible" bidder. Such a classification of bidders is based on Alabama law and is a rational basis for classification. The motion will be granted as to the equal protection claim. There is no evidence other than the conclusory suggestion of the plaintiff, that the decision was other than rationally based. In *Rogin v. Bensalem TP.,* 616 F.2d 680 (3rd Cir.1980), the court said:

> Such broad deference is extended to legislative judgments dealing with business and economic matters because of the recognition that the process of democratic political decisionmaking often entails the accomodation of competing interests, and thus necessarily produces laws that burden some groups and not others. In the absence of special justification for more searching judicial examination—such as an allegation that the legislative body has classified on the basis of a suspect characteristic—for a court to undo the fruits of this process would be "to condemn as unconstitutional the most characteristic product of a democratic (perhaps of any) political system."

616 F.2d at 687–88.

Defendants' motions to dismiss will be granted.