BEATTY, Justice.
Petition for a writ of mandamus directed to the Honorable Gary L. McAliley, Judge of the Circuit Court of Coffee County. The petition seeks to have Judge McAliley vacate his order granting a preliminary injunction in favor of National Security Insurance Company in litigation between it and this petitioner. In the alternative, petitioner seeks to have that case transferred to the Montgomery Circuit Court and seeks other relief. For the reasons that follow, the writ is granted.
National Security Insurance Company (“National Security”) is an insurance company organized under Alabama law with its principal place of business in Elba, Coffee County. Mutual Savings Life Insurance Company (“Mutual Savings”) is also an Alabama insurance company, with its principal place of business in Decatur, Alabama. Mutual Savings is a member of Victory Financial Group, Inc., an insurance holding company whose executive offices are located in New Orleans, Louisiana. National Security sued Mutual Savings in Coffee County, Elba Division, seeking sequestration of 226,243 shares of National Security common stock that it claimed had been illegally acquired by Mutual Savings, to prohibit Mutual Savings from voting those shares, and to compel the divestiture of those shares by Mutual Savings. As the basis for this relief, National Security alleged that Mutual Savings, in contravention of Code of 1975, § 27-29-3(a), illegally acquired the subject shares and ultimate voting control thereof, notwithstanding the fact that the selling shareholders remained shareholders of record. National Security further alleged that Mutual Savings might attempt, either directly or indirectly, to vote those shares and thus profit by its illegal act, or would attempt to dispose of them in violation of the Insurance Holding Company System Regulatory Act, Code of 1975, § 27-29-1 et seq. Thus, according to petitioner, this action was commenced under § 27-29-9.
Under the Insurance Holding Company System Regulatory Act, § 27-29-9(b):
“If an insurer ... has reason to believe that any security of the insurer has been, or is about to be, acquired in contravention of the provisions of this chapter or of any rule, regulation or order issued by the commissioner under this chapter, the insurer ... may apply to the circuit court for Montgomery county or to the circuit court for the county in which the insurer has its principal place of business to enjoin any offer, request, invitation, agreement or acquisition made in contravention of section 27-29-3 or any rule, regulation or order issued by the commissioner thereunder to enjoin the voting of any security so acquired, to void any vote of such security already cast at any meeting of shareholders and for such other equitable relief as the nature of the case and the interests of the insurer’s policyholders, creditors and shareholders or the public may require.” (Emphasis added.)
The Act also provides for sequestration of voting shares in § 27-29-9(c):
“In any case where a person has acquired ... any voting securities in violation of this chapter or any rule, regulation or order issued by the commissioner under this chapter, the circuit court for Montgomery county or the circuit court for the county in which the insured has its principal place of business may, on such notice as the court deems appropriate, upon the application of the insurer or the commissioner, seize or sequester any voting securities of the *1380 insurer owned, directly or indirectly, by such person and issue such orders with respect thereto as may be appropriate to effectuate the provisions of this chapter. Notwithstanding any other provision of law, for the purposes of this chapter the situs of the ownership of the securities of domestic insurers shall be deemed to be in this state.” (Emphasis added.)
After National Security’s complaint was filed, the trial court set the case for a hearing on a request for preliminary injunction. Mutual Savings moved to dismiss the complaint upon a number of grounds, viz.: (1) that the Coffee Circuit Court lacked jurisdiction; (2) that Coffee County was an improper venue; and (3) res judica-ta and collateral estoppel. The trial court overruled the motion to dismiss, whereupon Mutual Savings answered, asserting as defenses the same matters raised in its motion to dismiss. At the hearing on the preliminary injunction, a certified copy of a hearing conducted in connection with the acquisition in question before the Alabama insurance commissioner and a certified copy of the pending appeal of the commissioner’s order that was filed in the Montgomery Circuit Court were entered into evidence. The Coffee Circuit Court heard oral argument on the request for a preliminary injunction, thereafter ordering Mutual Savings, among other things, not to directly or indirectly vote any of the National Security shares owned by Mutual Savings or to divest itself of those shares. The case was also set for a final hearing on a later date. Mutual Savings gave notice of appeal of that order to this Court.
It appears from the record that the controversy revolves around the acquisition of the block of National Security common stock that was owned by Atlantic American Corporation, apparently a Georgia corporation located in Atlanta. This block of stock represented a 22.2 percent interest in National Security. J. Darrell Jordan, president of Victory Financial Group, Inc., had engaged in discussions early in 1987 with Atlantic American Corporation concerning a possible purchase, but, thinking that the price was excessive, declined further interest. However, on May 13, 1987, Jordan received a telegram from Atlantic American inquiring whether Jordan would be interested in reopening negotiations within a certain price range. Jordan replied on that day with an offer to negotiate, concluding with this statement: “We would file a disclaimer of control in Alabama and not require any documentation so our transaction could be completed in short order.” (Emphasis added.)
On May 14, 1987, Jordan and Atlantic American Corporation agreed upon a price. At this time Mutual Savings had not communicated with the Alabama commissioner of insurance with any filing, or otherwise. However, Jordan did contact his lawyer in Birmingham concerning the transaction, and his lawyer, in turn, on May 15, 1987, telephoned a representative of the Alabama Insurance Department to inquire whether the disclaimer procedure set forth in Code of 1975, § 27-29-4(i), would apply to a transaction in which more than 5 percent of an Alabama insurer was sought to be acquired but without control of the corporation itself. The concern over the disclaimer doubtless resulted from the provisions of § 27-29-3(a), which provides in pertinent part:
“(a) Filing and approval requirements —No person other than the issuer shall make a tender offer for or a request or invitation for tenders of, or enter into any agreement to exchange securities for or acquire in the open market any voting security of a domestic insurer if, after the consummation thereof, such person would, directly or indirectly, or by conversion or by exercise of any right to acquire, be in control of such an insurer, and no person shall enter into an agreement to merge with or otherwise to acquire control of a domestic insurer unless, at the time any such offer, request, or invitation is made or any such agreement is entered into, or prior to the acquisition of such securities if no offer or agreement is involved or within 15 days after any such offer, request or invitation is made or any such agreement is entered into, such person has filed with the commissioner and has sent to such *1381 insurer a statement containing the information required by this section and such offer, request, invitation, agreement or acquisition either:
“(1) Has been approved by the commissioner in the manner prescribed in this section; or
“(2) Expressly states that it is subject to approval by the commissioner in the manner prescribed in this section.”
The disclaimer procedure contained in § 27-29-4(i) is preceded by the requirements of registration of insurers that are members of an insurance holding company system. These insurers are required by § 27-29-4(b) to file a registration statement revealing, among other things, investments or purchases of “securities of the affiliates by the insurer,” the capital structure of the insurer, and “[ojther matters concerning transactions between registered insurers and any affiliates as may be included, from time to time, in any registration forms adopted or approved by the commissioner.” We surmise that Mutual Savings’ concern was with the effect the definition of “control” in § 27-29-1(3) would have upon this purchase so as to require prior filing and approval requirements under § 27-29-3(a) and the effect of the definition of “affiliate” in § 27-29-1(1) upon the need for a disclaimer as provided in § 27-29-4(i). In other words, if, through this purchase, Mutual Savings would not have “control” of National Security, and thus National Security would not be an “affiliate,” the requirements of advance filing or disclaimer would not apply. Indeed, “affiliate” is defined as: “Such term shall include an ‘affiliate’ of, or person ‘affiliated’ with, a specific person, and shall mean a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, the person specified.”
“Control” is defined as follows:
“(3) CONTROL. Such term ... shall mean the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract other than a commercial contract for goods or non-management services, or otherwise, unless the power is the result of an official position with or corporate office held by the person. Control shall be presumed to exist if any person, directly or indirectly owns, controls, holds with the power to vote or holds proxies representing five percent or more of the voting securities of any other person_ This presumption may be rebutted by a showing made in the manner provided by subsection (i) of section 27-29-4 that control does not exist in fact....”
Counsel for Mutual Savings advised the Insurance Department of the company’s willingness to refrain from voting the stock until a “Form A, Statement Regarding the Acquisition of Control or Merger With a Domestic Insurer,” had been filed with the Department and control had been approved. The Insurance Department responded by a statement to the effect that the subject would be discussed within the Department. Meanwhile, on May 18, 1987, Mutual Savings acquired the shares but informed Atlantic American that it would not have the shares transferred into the name of Mutual Savings until a disclaimer of control had been filed with the Insurance Department under § 27 — 29—4(i) or until a “Form A” filing had been made and control approved. Section 27-29-4(i) states:
“Any person may file with the commissioner a disclaimer of affiliation with any authorized insurer or such a disclaimer may be filed by such insurer or any member of an insurance holding company system. The disclaimer shall fully disclose all material relationships and bases for affiliation between such person and such insurer as well as the basis for disclaiming such affiliation. After a disclaimer has been filed, the insurer shall be relieved of any duty to register or report under this section which may arise out of the insurer’s relationship with such person, unless and until the commissioner disallows such a disclaimer. The commissioner shall disallow such a disclaimer only after furnishing all parties in interest with notice and opportunity to *1382 be heard and after making specific findings of fact to support such disallowance.”
On the next day, May 19, 1987, Mutual Savings, by letter to the Insurance Department, confirmed the purchase and submitted information rebutting the statutory presumption of control, see § 27-29-1(3). Mutual Savings offered to enter into a written undertaking not to vote the shares until such time as it had made a “Form A” filing and acquisition of control had been approved.
Following receipt of that letter, the Insurance Department notified Mutual Savings that a disclaimer would be unacceptable, and that a “Form A” filing would be required to allow the Department to determine whether the acquisition should be approved. Mutual Savings complied with this decision by filing its “Form A.” The Insurance Department scheduled a public hearing, which was held on January 11, 1988. Pursuant to § 27-29-3(d)(2), representatives of National Security, Mutual Savings, and Atlantic American Corporation conducted discovery proceedings through depositions and otherwise.
During the pendency of this hearing, National Security moved the insurance commissioner to order Mutual Savings to immediately divest itself of all the shares of National Security that Mutual Savings held for its benefit. This motion was accompanied by an extensive brief, whose purpose was, inter alia, to refute the argument of Mutual Savings that it did not seek control of National Security and to establish that Mutual Savings had disregarded the procedures of § 27-29-3(a) et seq. That brief, in amending the earlier motion, sought specific relief: (1) that Mutual Savings immediately divest itself of the National Security stock; (2) that Mutual Savings forfeit all accrued dividends thereon; (3) that Mutual Savings pay attorney fees to National Security; and (4) that Mutual Savings be enjoined from acquiring any shares of stock of National Security during the lifetime of Louis J. Roussel, Jr. (the principal owner of Victory Financial Group, Inc.).
The administrative hearing was held by the insurance commissioner on January 11-13. The hearing was held on the “Form A” acquisition request and on the divestiture motions filed by National Security. Thereafter, on March 2, 1988, the commissioner entered an order disapproving, as of the date of the order, the acquisition of the stock by Mutual Savings. The commissioner did not grant the relief requested by National Security’s motions. On April 1, 1988, Mutual Savings filed notice of appeal of the commissioner’s order in the Montgomery Circuit Court under § 27-2-32 et seq., which provide for appeals to the Montgomery Circuit Court “from an order on hearing ... or as to a matter as to which the commissioner has refused or failed to make his order.” Under § 27-29-13, such an appeal consists of a trial de novo without a jury. That appeal is presently pending.
Standing alone, §§ 27-29-9(b) and (c) would appear to authorize the lawsuit that National Security filed in Coffee County. However, construing the various sections of the Insurance Holding Company System Regulatory Act in pari materia so as to give effect to each, Ex parte Johnson, 474 So.2d 715 (Ala.1985), we have concluded that those sections do not apply when an appeal has already been taken to the Montgomery Circuit Court under § 27-2-32 dealing with the same subject matter and parties. In such a case, it is clear that venue lies in Montgomery County, for the legislature could not have intended to have the same action pending in two distinct courts. Here, National Security was a party to the commissioner’s hearing, contested the acquisition, and advocated divestiture of the shares.' The subject matter of that hearing is now due for a de novo hearing in the Montgomery Circuit Court, and among the issues therein are those dealing with the acquisition, divestiture, or sequestration. Indeed, if it were ultimately found in that court that no “control” was obtained and no disclaimer was necessary, it would appear that there would be no need for sequestration or divestiture of the subject shares.
*1383 We find, therefore, that the proper venue of these proceedings lies in Montgomery County. It follows that the Coffee Circuit Court, Elba Division, was in error when it refused to transfer National Security’s action to Montgomery County. The writ is granted, and the Honorable Gary L. McAli-ley is hereby ordered to transfer this cause in accordance with this opinion.
WRIT GRANTED.
TORBERT, C.J., and MADDOX, ALMON and HOUSTON, JJ., concur.