[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 427 
This case involves an interpretation of the Competitive Bid Law, specifically Ala. Code 1975, § 41-16-50 et seq. The basic question presented is whether a county board of education, having required a bidder on a school construction project to be prequalified, could award the contract to a contractor who submitted a higher bid, on the basis that the higher bidder was "the lowest responsible bidder." § 41-16-50(a) (emphasis added). In short, did the school board, by requiring prequalification and then allowing a bidder to bid, predetermine the question of the bidder'sresponsibility?
Two other questions are also presented:
 (1) Did the trial court err in refusing to permit a witness to testify concerning the interpretation given to the term "lowest responsible bidder" by the Alabama Building Commission when a prequalification procedure was used and
 (2) Was the lowest bidder, in any event, entitled to compensatory damages for the expenses it had incurred in preparing to bid?
The trial court, after conducting a hearing, held that the school board could award the contract to the company it determined to be the "lowest responsible bidder," even though it had required all bidders to show that they were qualified before the bids were submitted.
 FACTS
The Shelby County Board of Education solicited bids for the construction of a new school building, to be known as the Oak Mountain Middle School. The Board delegated the task of preparing the bidding documents and getting the project ready to be presented for bidding to its facilities and maintenance coordinator, Allen Fulton, who acted as liaison between the Board and G. Alvon Dampier and Associates, which the Board had hired as the architect. G. Alvon Dampier prepared the specifications and all bidding documents, which included detailed criteria that prospective bidders had to meet to be prequalified to submit bids. Among other things, prospective bidders had to submit a qualification statement on an American Institute of Architects ("AIA") Form A305, financial statements, prior job listings, and resumes of those persons proposed as the project manager and the superintendent. The specifications stated that only bidders submitting the AIA forms and qualifications, and who met the prescribed provisions, would be considered for an award. The Board expressly reserved the right to reject any bid and to select the lowest responsible bidder who met the requirements. Dampier and Fulton approved Crest Construction Company ("Crest") as being qualified to bid. Crest *Page 428 
prepared and submitted a bid, which was, in fact, the lowest bid, but the Board awarded the contract to the second lowest bidder, McCrory Building Company, with which the Board had had prior satisfactory dealings. In refusing to award the contract to Crest, the Board cited concerns that Crest, a one-man operation with hardly any equipment and with no work in progress or any income from work in 1991, might be unable to finish the project before the 1993-94 school year. The Board further noted that it had had problems with bonding companies finishing projects on time when contractors failed to perform.
Crest sued the Board, alleging in its amended complaint that the Board had breached its duty of good faith and fair dealing. Crest sought to enjoin the execution of the contract between the Board and McCrory, and also sought a declaration that the contract, if executed, would be void. Crest also requested that the court order the Board to award the contract to it. Crest also asked for compensatory damages as reimbursement of bid preparation expenses. Crest also included McCrory as a defendant. The trial court, sitting without a jury, found that both Crest and McCrory were qualified to submit bids, but held that the Board had legitimate reasons to award the contract to McCrory. The effect to that holding was that the Board, even though it had required Crest to be prequalified, nevertheless could award the contract to the "lowest responsible bidder." The trial court denied the injunction and dismissed the claims. Crest appeals. We affirm.
 I.
Crest's main argument is that the trial court erred in holding that the Competitive Bid Law authorizes an agency "to get the best quality at the lowest possible price." R. 41 (emphasis by the trial court). Crest argues that public agencies cannot award the contract on the basis of a bidder's being the most responsible bidder, and that the inquiry regarding a bidder's responsibility should end once that bidder is prequalified, as Crest was. In short, Crest says that the prequalification procedure exhausted the Board's discretion to award the construction contract to any other than the lowest bidder.
Crest's argument obviously has appeal, because the trial court expressly found that Crest had qualified under the Board's qualification procedure. We hold, however, that the trial court did not err, for the reasons we will set forth in this opinion.
Of course, public agencies covered by the Competitive Bid Law must award contracts to "the lowest responsible bidder." §41-16-50(a). Although the Competitive Bid Law does not provide for awards based on relative degrees of "responsibility," quality is a consideration when determining responsibility.Mitchell v. Walden Motor Co., 235 Ala. 34, 177 So. 151
(1937); see also Arrington v. Associated GeneralContractors of America, 403 So.2d 893 (Ala. 1981),cert. denied, 455 U.S. 913, 102 S.Ct. 1265,71 L.Ed.2d 453 (1982).
Most of the decisions of this Court involving the application of the term "lowest responsible bidder" have construed the provisions of § 41-16-57(a), that part of the Competitive Bid Law involving contracts for the purchase of "commodities." See, e.g., Mobile Dodge, Inc. v. Mobile County,442 So.2d 56 (Ala. 1983); International TelecommunicationsSystems v. State, 359 So.2d 364 (Ala. 1978); White v.McDonald Ford Tractor Co., 287 Ala. 77, 248 So.2d 121
(1971). Insofar as we can ascertain, this Court has not previously considered the question in a setting involving a construction contract where the public agency has determined that the bidder is qualified, pursuant to its prequalification procedure, but then determines, after the bid is submitted, that the bidder, even though it is the low bidder, is not the lowest responsible bidder.
Although it appears that this Court has not previously addressed the specific question presented here, the United States Court of Appeals for the Eleventh Circuit, applying and interpreting Alabama's Competitive Bid Law, has considered a case involving a factual situation analogous to the one presented here. In Advance Tank *Page 429 Construction Co. v. Arab Water Works, 910 F.2d 761
(11th Cir. 1990), the Court of Appeals held that, in determining the "lowest responsible bidder" an awarding authority could consider some of the same factors this Court has set out in decisions involving commodities contracts. Crest argues that "[t]he Eleventh Circuit decision in AdvanceTank has greatly weakened the Competitive Bid Law of Alabama and has caused considerable consternation within the building industry since it was published," and Crest argues that this present case provides this Court the opportunity to undo the damage caused by Advance Tank and, in the process, to put reasonable limits on the discretion which may be exercised by public authorities in selecting the lowest responsible bidder for construction contracts."
Crest seeks to distinguish between a commodities contract and a construction contract, arguing that the considerations governing an award of a construction contract are different from those governing an award of a commodities contract, because all bidders for construction contracts offer to build according to the same plans and specifications. We disagree. Most of the factors listed in § 41-16-57(a) (quality, conformity to specifications, purpose, etc.) are factors commonly considered in regard to construction contracts awarded pursuant to § 41-16-50(a). Furthermore, both statutes are part of the same Article and should be construed together.See, e.g., Ex parte Mutual Savings Life Insurance Co.,536 So.2d 1378, 1382 (Ala. 1988); Florence v.Williams, 439 So.2d 83, 87 (Ala. 1983); AdvanceTank, 910 F.2d at 764.
Although the case did not involve a construction contract, and even though a prequalification procedure was not involved, this Court in Inge v. Board of Public Works of Mobile,135 Ala. 187, 33 So. 678 (1903), construing the words "lowest responsible bidder," said:
 "In the letting of public contracts to the lowest responsible bidder, the duty of the officer is not merely ministerial, but partakes of a judicial character, requiring the exercise of discretion. A discretion, however, which should always be exercised to the end of subserving the public interest, and never in the interest of the bidder. In deciding upon the responsibility of bidders it is the duty of the board or officers not only to take into consideration the pecuniary ability of bidders to perform the contract, but also to ascertain which ones, in point of skill, ability and integrity would be most likely to do faithful, conscientious work, and to fulfill the terms of the contract."
135 Ala. at 198, 33 So. at 681.
This Court has consistently held that when letting contracts covered by the Competitive Bid Law, public agencies have discretion to determine who is the lowest responsible bidder.Mobile Dodge, Inc. v. Mobile County, 442 So.2d 56
(Ala. 1983); International Telecommunications Systems v.State, 359 So.2d 364 (Ala. 1978); White v. McDonaldFord Tractor Co., 287 Ala. 77, 248 So.2d 121 (1971). Courts will not interfere with that discretion "unless it is exercised arbitrarily or capriciously, or unless it is based upon a misconception of the law or upon ignorance through lack of inquiry or in violation of law or is the result of improper influence." White, 287 Ala. at 86, 248 So.2d at 129.
"The Competitive Bid Law does not require that the lowest bid be accepted," International TelecommunicationsSystems, 359 So.2d at 366, but only that the officials charged with the responsibility of determining the lowest responsible bid act in good faith. White,287 Ala. at 86, 248 So.2d at 129. This Court has applied some of these principles to services contracts, see Horne WreckerService, Inc. v. City of Florence, 567 So.2d 1285 (Ala. 1990), and, as stated previously the Eleventh Circuit Court of Appeals has applied them to construction contracts. SeeAdvance Tank; see also Urban Sanitation Corp. v. City of PellCity, 662 F. Supp. 1041 (N.D.Ala. 1986).
Based on the foregoing, we reject Crest's argument thatAdvance Tank incorrectly interpreted Alabama's Competitive Bid Law. If we accepted Crest's argument, we would hold that the judicial discretion *Page 430 
vested in an awarding authority would be exhausted when that authority, using a prequalification procedure, determined that a bidder was qualified to bid. The fact that a contractor has been prequalified does not necessarily represent a finding of responsibility. Cf. Rollings Construction, Inc. v. TulsaMetropolitan Water Authority, 745 P.2d 1176 (Okla. 1987). Prequalification is a voluntary process, but determining responsibility is not.[1] Prequalification saves time, money, and effort by eliminating obviously unqualified bidders, and it is generally based on tangible and objective criteria, such as work experience, size, net worth, equipment, etc. Determining responsibility is different, because it involves more qualitative and less quantitative considerations, such as determining which bidders "in point of skill, ability and integrity would be most likely to do faithful, conscientious work, and to fulfill the terms of the contract." Inge,135 Ala. at 198, 33 So. at 681.
The parties dispute whether the Board intended by its prequalification procedure to deplete its discretion. Dampier testified that he had no authority to approve the qualifications of bidders. Dampier developed the prequalification criteria and consulted with Fulton. The Board's attorney reviewed some of the criteria, which were promulgated over the signature of the superintendent, Dr. Norma Rogers. Nevertheless, the Board apparently had not previously used prequalification and did not vote to use it in this case. Moreover, the specifications expressly reserved the Board'sright to reject any bid. For these reasons, we conclude that the Board did not affirmatively chose to deplete its discretion through the prequalification process used in this case. Cf. Advance Tank, 910 F.2d at 768.
The question then becomes whether the Board's decision to award the contract to McCrory was arbitrary or capricious under the principles of law this Court set forth in White,287 Ala. at 86, 248 So.2d at 129. We hold that the trial court did not err in determining that the Board acted in accordance with the law. There was evidence that before awarding the contract, the Board questioned Ben Miree, Crest's president and sole employee, about Crest. The evidence tended to show that, instead of acting arbitrarily or out of ignorance, the Board awarded the contract to McCrory based on legitimate concerns about Crest's size, experience, and lack of equipment and other resources.
Crest claims alternatively that the Board's award of the contract to McCrory deprived Crest of due process because, it argues, Crest did not receive adequate notice of the Board's concerns. This argument appears not to have been made to the trial court; therefore, we will not consider it on appeal.E.g., Wang v. Bolivia Lumber Co., 516 So.2d 521 (Ala. 1987); Smiths Water Authority v. City of Phenix City,436 So.2d 827 (Ala. 1983).
Crest further argues that the Board was estopped to declare Crest nonresponsible. The elements of equitable estoppel are:
 "(1) The person against whom estoppel is asserted, who usually must have knowledge of the facts, communicates something in a misleading way, either by words, conduct, or silence, with the intention that the communication will be acted on; (2) the person seeking to assert estoppel, who lacks knowledge of the facts, relies upon that communication; and (3) the person relying would be harmed materially if the actor is later permitted to assert a claim inconsistent with his earlier conduct."
General Electric Credit Corp. v. Strickland Division ofRebel Lumber Co., 437 So.2d 1240, 1243 (Ala. 1983) (citation omitted). Crest contends that the Board misled it by communicating — through the invitations for bids and through Fulton's telephone call to Miree encouraging Crest to bid — the idea that Crest would be given the award if it was prequalified and then submitted the lowest bid; Crest contends that it relied on that communication; and it contends that in reliance it was harmed by *Page 431 
incurring expenses in preparing a bid. We disagree. We conclude that the trial court did not err in holding that Fulton's encouraging Miree to pursue the contract was not assurance that Crest would receive the award if its bid was lowest. The specifications expressly reserved the right to reject any bid. More than once, the documents mentioned that compliance with the prescribed provisions was a condition forconsideration for an award. The trial court did not err in denying Crest any relief on the estoppel theory.
Fourth, Crest claims that the Board did not follow its own rules, under which, Crest says, it met the stated criteria for an award. Particularly, Crests argues that none of the Board's reasons for rejecting Crest's bid were listed as disqualifying factors in the published invitation for bids. The problem with this argument is that it assumes that prequalification is synonymous with a finding of responsibility, which, as we have discussed above, is not necessarily so. Furthermore, the specifications provided that meeting the prescribed provisions was a prerequisite to being considered for an award. The Board did consider Crest for an award. When planning a construction project, it would be difficult at best to conceive and list every possible factor that would disqualify contractors. The decision to disqualify a low bidder must be made in good faith, however, in the public interest and not in the interest of the successful bidder. See, e.g.,White, 287 Ala. at 86, 248 So.2d at 129.
 II.
The second issue is whether the trial court erred in refusing to permit Philip Sharpe, the director of the technical staff of the Alabama Building Commission, to testify about the public policy considerations behind the prequalification procedure the Building Commission's use of prequalification, and its practice of awarding contracts based on the lowest prequalified bid. Citing White and J.F. Pate Contractors v. MobileAirport Authority, 484 So.2d 418 (Ala. 1986), Crest argues that interpretation of regulations or specifications by agencies, architects, attorneys, public officials, or other connected persons is relevant in a bid protest action.
Many factors indicate that the trial court did not err in excluding Sharpe's proffered testimony. First, a trial court's ruling on the materiality, relevancy, and remoteness of evidence are matters within the discretion of the trial court, and a ruling in that regard will not be disturbed by this Court unless it is shown to have been an abuse of discretion.Moseley v. Lewis Brackin, 583 So.2d 1297, 1300 (Ala. 1991). The Building Commission did not supervise the award of the contract; thus, this case is distinguishable fromWhite and J.F. Pate Contractors, in which persons connected to the awarding agency testified regarding interpretation and practice. The statute referring to prequalification by the Building Commission, Ala. Code 1975, § 39-2-4, does not apply to county boards of education.See Ala. Code 1975, § 39-2-1(2). The Building Commission's policies and practices are not at issue in this case. Arguably, its interpretation of its own prequalification process is irrelevant; therefore, we find no abuse of discretion. E.g., Dairyland Insurance Co. v. Jackson,566 So.2d 723 (Ala. 1990).
 III.
The third and final issue is whether the trial court erred in refusing to allow evidence of costs Crest incurred in preparing its bid. Crest asks us to adopt the rationale of KecoIndustries, Inc. v. United States, 192 Ct.Cl. 773,428 F.2d 1233 (1970), the leading case allowing a disappointed bidder to recover bid preparation expenses.
We refuse to adopt such a rationale or procedure in Alabama. The legislature has provided a remedy to prevent an agency from violating the provisions of the Competitive Bid Law. A taxpayer or a "bona fide unsuccessful bidder" may sue "to enjoin execution of any contract entered into in violation of the provisions of [Article 3, § 41-16-50 through 41-16-63]." Ala. Code 1975, § 41-16-61. This language is unambiguous.City of Montgomery v. Brendle *Page 432 Fire Equipment, Inc., 291 Ala. 216, 279 So.2d 480
(1973). We have held that an identical provision in §41-16-31, found in another Article of Chapter 16 of Title 41, and dealing with another portion of the Competitive Bid Law, prevents awards of compensatory damages. See Jenkins, Weber Associates v. Hewitt, 565 So.2d 616 (Ala. 1990); seealso Urban Sanitation Corp. v. City of Pell City,662 F. Supp. 1041 (N.D.Ala. 1986). Bid preparation expenses would be classified as compensatory damages, and we hold that the construction this Court placed on another provision included in the same Chapter, and containing identical language, should be adopted here and applied to § 41-16-61. The legislature obviously intended these two sections to have the same meaning.See St. George Island, Ltd. v. Rudd, 547 So.2d 961
(Fla.Dist.Ct.App. 1989), approved in part, disapproved inpart, Brown v. St. George Island, Ltd., 561 So.2d 253
(Fla. 1990).
Crest recognizes that a disappointed bidder's remedies are limited under Alabama law, because the Competitive Bid Law benefits the public and creates no enforceable rights in the bidders. Townsend v. McCall, 262 Ala. 554,80 So.2d 262 (1955). Because the legislature has provided a remedy, albeit a limited one, we hold, in light of a settled maxim of statutory construction, expressio unius est exclusioalterius,[2] and in light of the purpose of the Competitive Bid Law, which we hold has not been violated in this case, that the trial court did not err in excluding evidence of bid preparation expenses. We decline to adopt theKeco Industries rule.
Under the facts of this case, we hold that the board did not predetermine responsibility. We should not be understood as holding that a public agency can not predetermine the responsibility of a bidder. We accept the proposition that a public agency can provide for a prequalification procedure.[3] Here, however, the Board expressly reserved in the specifications the right to reject any bid by a prequalified bidder.
Based on the foregoing, we affirm the judgment of the trial court.
AFFIRMED.
HORNSBY, C.J., and SHORES, ADAMS, HOUSTON, STEAGALL and INGRAM, JJ., concur.
[1] Violation of the provisions of the Competitive Bid Law is a felony. § 41-16-51(d).
[2] "[T]he expression of one thing is the exclusion of another." Black's Law Dictionary 521 (6th ed. 1990).
[3] The Alabama Building Commission filed an amicus curiae brief in which it asked us to hold that "[p]requalification procedures serve important public interests in (a) assuring the public that only responsible contractors will bid, and (b) assuring contractors that, if they are prequalified for a procurement, they will be awarded the contract if they are low bidder"; and that "[p]requalified bidders should be awarded the contract if the low bidder unless new post-qualification information puts that conclusion in doubt," and that "[w]here such post-qualification information comes to light, the bidder involved should be given notice of the information and an opportunity to respond." Apparently, the Alabama Building Commission has established a pre-qualification procedure that is binding on the Commission. Cf. Lord Electric Co. v.Litke, 122 Misc.2d 112, 469 N.Y.S.2d 846 (N.Y.Sup.Ct. 1983).