WOODALL, Justice.
Vinson Guard Service, Inc. (“Vinson”), appeals from a judgment entered in favor of the Retirement Systems of Alabama (“RSA”), in Vinson’s action alleging violations of the Competitive Bid Law. We affirm.
This dispute began in February 2001, when RSA posted “Invitation to Bid No. 00-012,” seeking bids for “Security Guard Services” (“the invitation”). The invitation solicited bids for the provision of security services at properties owned by RSA. These properties were described on a form styled “Schedule A,” which was attached to the invitation. Schedule A included blanks, requesting from the bidders a separate bid for “monthly hours,” a “monthly charge,” and an “annual charge by facility,” for each property or location listed on the schedule. Additionally, Schedule A included a blank requesting a bid for the “total annual charge for all facilities.” Although it illustrated guard schedules for each location for which RSA required security services, Schedule A did not contain *809 the total annual hours for which security services were to be provided.
Five candidates responded to the invitation: (1) Vinson, (2) Murray Guard, Inc. (“Murray”), (3) Burns International Security Services, (4) Montgomery Security Service, and (5) Don Terry and Associates. None of the candidates calculated the same number of total annual hours.
After an initial examination of the bids, RSA notified Murray that it would be awarded the contract. However, after Vinson requested a review of RSA’s decision and objected to the proposed award, RSA suspended its decision to award the contract to Murray. Subsequently, RSA proposed to reject all the bids and to rebid the contract, on the ground that the invitation contained “multiple errors” and “bad information.”
Consequently, Vinson filed a “Complaint for Declaratory and Injunctive Relief’ against RSA. The complaint alleged that Vinson was the “lowest responsible bidder in compliance with the complete terms and specifications of the [invitation], so that the contract should be awarded to [it].”[1] Vinson sought a judgment enjoining RSA from rebidding the contract, declaring Vinson the winning bidder, and compelling RSA to award the contract to Vinson.
On May 4, 2001, the trial court entered a judgment denying Vinson’s requested relief. Specifically, the order stated:
“Defendant, Retirement Systems of Alabama (‘RSA’), has contended that there was a mistake in the calculation of the required number of hours of guard service required by the invitation for bids. Plaintiff, Vinson, contends that it was the responsible low bidder, and that the putative low bidder, by approximately l<t per hour, [Murray] should be disqualified for failure to comply fully with the bid instructions. While the court finds that the lowest responsible bidder with a complete bid package was Vinson, the court does not find existing Alabama statutory authority, or other precedent, which would empower the court to make an affirmative award of the contract to Vinson.
[[Image here]]
“The alternative request is HEREBY DENIED that RSA should be enjoined from rebidding the contract.”
In other words, the trial court refused to compel RSA to award the contract to Vinson and refused to enjoin RSA from rebidding the contract. From that judgment, Vinson appealed.[2]
On appeal, Vinson contends that the trial court correctly held that it was the lowest responsible bidder and that it erred, therefore, in refusing to compel RSA to award it the security-services contract. As a corollary to that argument, it argues that the trial court erred in refusing to enjoin RSA from rebidding the contract. According to RSA, on the other hand, the trial court correctly concluded that it had no authority under the Alabama Competitive Bid Law, Ala.Code 1975, § 41-16-20 et seq., to compel it to award the contract to Vinson.
Both parties cite Ala.Code 1975, § 41-16-31, which provides:
“Any taxpayer of the area within the jurisdiction of the awarding authority and any bona fide unsuccessful bidder on a particular contract shall be empow *810 ered to bring a civil action in the appropriate court to enjoin execution of any contract entered into in violation of the provisions of this article.”
See also Ala.Code 1975, § 41-16-61, applicable to “competitive bidding on contracts of certain state and local agencies,” which provides:
“Any taxpayer of the area within the jurisdiction of the awarding authority and any bona fide unsuccessful bidder on a particular contract shall be empowered to bring a civil action in the appropriate court to enjoin execution of any contract entered into in violation of the provisions of this article.”
Vinson states: “[I]t is clear that the court could properly enjoin any award by RSA to bidders other than Vinson which [was] not in compliance with the invitation to bid or who should have been otherwise disqualified.” Vinson’s Brief, at 16 (emphasis added). “While RSA argue[s] ... that the court lacked power to award a contract ..., it is clear that the injunctive power is broad enough to cover both mandatory and prohibitory relief, i.e., to preclude [an] award to bidders other than Vinson, and preclude rebidding where ... Vinson was the lowest responsible bidder.” Vinson’s Brief, at 16 (emphasis in original). The dispositive issue is whether the Competitive Bid Law authorizes mandatory relief, namely, an order compelling a state agency to award a contract to a certain bidder. If it does not, then, corollarily, the court cannot enjoin the agency from rebidding the contract.
In considering this issue, we do not write on a clean slate. This Court has often addressed the scope of the remedy available under both § 41-16-31 and § 41-16-61.[3] As a threshold matter, this Court has noted that the language of these sections is “unambiguous”; consequently, “ ‘there is no room for construction.’ ” City of Montgomery v. Brendle Fire Equipment, Inc., 291 Ala. 216, 220, 279 So.2d 480, 484 (1973) (quoting Alabama Industrial Bank v. State, 286 Ala. 59, 63, 237 So.2d 108, 111 (1970)).
The remedy provided by the Competitive Bid Law is a “limited one.” Crest Constr. Corp. v. Shelby County Bd. of Educ., 612 So.2d 425, 432 (Ala.1992). “[W]hen letting contracts covered by the Competitive Bid Law, public agencies have discretion to determine who is the lowest responsible bidder.” Crest, 612 So.2d at 429. “Courts will not interfere with that discretion ‘unless it is exercised arbitrarily or capriciously, or unless it is based upon a misconception of the law or upon ignorance through lack of inquiry or in violation of law or is the result of improper influence.’ ” Id. (quoting White v. McDonald Ford Tractor Co., 287 Ala. 77, 86, 248 So.2d 121, 129 (1971)).
“ ‘The provision for letting the contract to the lowest responsible bidder is for the benefit of the public and does not confer on a bidder any right enforceable at law or in equity ....’” Tectonics, Inc. v. Castle Constr. Co., 496 So.2d 704, 705-06 (Ala.1986) (quoting Townsend v. McCall, 262 Ala. 554, 558, 80 So.2d 262, 265 (1955)) (emphasis added in Tectonics). An unsuccessful bidder may not sue for monetary damages, Jenkins, Weber & Assocs. v. Hewitt, 565 So.2d 616, 617 (Ala.1990); or “recover bid preparation expenses.” Crest Constr. Corp., 612 So.2d at 431-32. More to the point, an unsuccessful bidder has no *811 “ ‘right or expectancy to insist upon the award of a contract.’ ” Jenkins, Weber & Assocs., 565 So.2d at 618 (quoting with approval Urban Sanitation Corp. v. City of Pell City, 662 F.Supp. 1041, 1044 (N.D.Ala.1986) (emphasis added)).
These cases answer the first question presented by Vinson — whether Vinson is entitled to a mandatory injunction in the negative.[4] In other words, the Alabama Competitive Bid Law does not authorize an order compelling RSA to award Vinson the contract.
Wallace v. Board of Education of Montgomery County, 280 Ala. 635, 197 So.2d 428 (1967), cited by Vinson, is not to the contrary. In that case, the trial court enjoined the letting of a contract, the substantive provisions of which violated the Competitive Bid Law. 280 Ala. at 638, 197 So.2d at 431. Thus, the power exercised by the trial court in Wallace—and affirmed by this Court—was of the sort expressly contemplated by § 41-16-31 and § 41-16-61, and traditionally exercised by this Court in applying the Competitive Bid Law.[5] Wallace is no authority for the relief Vinson seeks: an order mandating the letting of a contract to a specific bidder.[6]
Vinson insists, however, that the judiciary has “free-standing” injunctive power, that is, outside the statutes. More specifically, it contends that “[t]he power to enjoin, with both prohibitive and mandatory relief, existed in Alabama courts without the statute[s], which w[ere] specific to [the] Alabama Competitive Bid [L]aws.” Reply Brief, at 4. It argues that the judiciary’s broad, general equity powers include both prohibitive and mandatory relief. Vinson insists, in other words, that relief under general equity principles is broader than that afforded by the statutes.
The difficulty in adopting such an approach is, of course, that the exception would swallow the rule, rendering the statutes superfluous. The rule we apply, as distilled from our cases, is consistent with the healthy deference we afford governmental agencies in their determinations as to who is the “lowest responsible bidder.” The trial court did not err in refusing to compel RSA to award the contract to Vinson.
From this conclusion, it follows that Vinson was not entitled to an injunction prohibiting RSA from rebidding. This is so, because, logically, if RSA cannot be compelled to award the contract to Vinson — -or to any of the other entities responding to the invitation — then RSA may have no alternative but to rebid the contract. Indeed, this result is consistent with the principle recited in our cases that the statutes do “not contemplate enjoining future contractual arrangements.” Brendle Fire Equipment, Inc., 291 Ala. at 220, 279 So.2d at 484 (emphasis added); Spring Hill Lighting & Supply Co. v. Square D *812 Co., 662 So.2d 1141, 1146 (Ala.1995); Jenkins, Weber & Assocs., 565 So.2d at 617.
Vinson, nevertheless, suggests that allowing RSA to rebid the contract creates a potential for abuse, such as successive rebids “designed to reward favorite-son candidates.” Reply Brief, at 4. It argues that it is “entitled to the award in order to protect the public interest against such arbitrary or ad hoc practices.” Id.
We are not here presented with a case involving successive rebids, and the trial court made no finding that RSA’s rebid proposal was arbitrary or capricious. As justification for its decision to rebid, RSA cites the errors contained in its invitation. For example, Schedule A not only failed to set forth the total annual hours for which security was to be provided, but RSA had miscalculated on Schedule A the weekend hours it required security services at some of the facilities. Specifically, in relation to four of the facilities, Schedule A computed the hours from 6:00 p.m. Friday through 6:00 a.m. Monday as 48 consecutive hours. That calculation is incorrect, and William Douglass, “RSA director of office services,” testified in the trial court that, “[i]f anyone relied on that [calculation in forming a bid], they would have been mistaken.”
Moreover, because RSA failed to provide bidders with a total of annual hours, none of the candidates bid on the same number of total hours. None of the bidders arrived at the same total number of hours as did RSA. According to RSA, “everybody had miscalculated the hours.” Douglass testified that, because of the errors in the invitation, the “only fair thing to do is to rebid.”
Under these circumstances, we need not consider whether there might be a judicially created remedy for arbitrary, successive bids apparently “designed to reward favorite-son candidates.” Under the facts of this case, any expansion of remedies under the Competitive Bid Law must proceed from the Legislature, not from this Court.
In summary, the trial court correctly refused to compel RSA to award the contract to Vinson, and it correctly declined to enjoin RSA from rebidding the contract. Consequently, the judgment of the trial court is affirmed.
AFFIRMED.
LYONS and JOHNSTONE, JJ., concur.
MOORE, C.J., and HOUSTON, J., concur in the result.

. The Competitive Bid Law, Ala.Code 1975, § 41-16-20 et seq., mandates that contracts awarded "through competitive bidding" be awarded to the "lowest responsible bidder.” § 41-16-27(a) (emphasis added).

. Murray was never a party to this action and is not involved in this appeal.

. These two sections "contain[] identical language," differing only as to the specific portions of the Competitive Bid Law to which they apply. Crest Constr. Corp. v. Shelby County Bd. of Educ., 612 So.2d 425, 432 (Ala.1992). Therefore, "[t]he legislature obviously intended these two sections to have the same meaning.” Id.

. Because our cases have spoken to this issue, we decline Vinson's invitation to consider cases from other jurisdictions construing their respective competitive bid laws.

. To be sure, the trial court’s injunction in Wallace was mandatory in some respects. However, this Court expressly refused to address those aspects of the injunction, stating: “Whether the mandatory provisions of the decree, if considered separately from the prohibitory provisions, might be erroneous is not presented and, therefore, is not decided.” 280 Ala. at 639-40, 197 So.2d at 432.

. General Electric Co. v. City of Mobile, 585 So.2d 1311 (Ala.1991), another case cited by Vinson, involved the same species of relief as that involved in Wallace. Indeed, Vinson concedes that it is confronted by a "scarcity of favorable Alabama cases.” Vinson’s Brief, at 20 (emphasis added).