Judge James H. Anderson, Montgomery, as respondent.
MENDHEIM, Justice.
CGI Technologies and Solutions, Inc. ("CGI"), and Clinton Carter, in his capacity as Director of the Alabama Department of Finance, separately petition this Court for a writ of mandamus directing the Montgomery Circuit Court to dismiss, for lack of subject-matter jurisdiction, an action filed by Jim Zeigler[1] challenging a contract between CGI and the State of Alabama on the basis that the contract violated Alabama's competitive-bid law. We grant the petitions and issue the writs.
I. Facts
On September 30, 1982, the State of Alabama, through the Department of Finance, entered into a software contract with American Management Systems, Inc. ("AMS"), that granted the State a license to install a local-government finance-system package on computers in the Finance Department ("the 1982 contract"). There is no dispute that the 1982 contract was competitively bid.
In 2004, AMS was acquired by CGI. On November 1, 2012, the State and CGI entered into what they called "Amendment 11" to the 1982 contract. Amendment 11 extended the license for "Advantage 2 Software," which apparently was or had become part of the local-government finance-system package, for an additional 15 years. Amendment 11 was the first amendment to the 1982 contract since 1994.
On January 1, 2013, the State and CGI entered into an agreement labeled "Amendment 12," which provided for the State to acquire what was called "the Packaged System," a program CGI was to configure, install, and maintain for the State's Medicaid agency and that included "Advantage-related enhancements." CGI began the work contracted for in Amendment 12 on January 15, 2013.
On September 30, 2013, the State and CGI entered into "Amendment 13," which authorized the purchase of the Packaged System for configuration, installation, and maintenance across State-agency computer systems over a period of five years. The software purchase and implementation provided by Amendment 13 became known as the State of Alabama Accounting Resources System ("STAARS"). According to Zeigler's complaint, "STAARS is based on *117 CGI's Advantage [Enterprise Resource Planning] software, which is designed and built specifically for state and local governments." The State and CGI entered into four amendments addressing STAARS between March 2014 and September 2015.
On March 31, 2017, the State and CGI entered into a letter agreement memorializing an understanding "relative to concluding work" on STAARS. The letter agreement noted that "CGI acknowledges the State's intent to begin transition to an in-house delivery plan or to award a new contract for operational services and support for STAARS within 90 days of the date of this letter, after which, CGI will provide Disengagement Services." Also, the letter agreement recognized a "winding down" of the contractual relationship between CGI and the State, which was to conclude by September 30, 2017. Other than the "winding-down period," the State agreed that "CGI has satisfied its contractual obligations with respect to the STAARS project and software and services provided by CGI under the STAARS Contract." The agreement also stated:
"CGI acknowledges that the State of Alabama will not further amend the 1982 Memorandum of Agreement, the amendments thereto, or any existing Statements of Work thereunder, nor restart work concluded by this agreement without executing a new contract competitively awarded pursuant to the provisions of Chapter 16 of Title 41, Code of Alabama 1975."
On September 29, 2017, Carter filed with this Court a "Supplement" to his petition in which he explained that, because of an "emergency" not anticipated by the State, the State had to enter into a further "Professional Services Contract" with CGI to extend its performance for up to 60 days beyond the original September 30, 2017, winding-down period. In other words, the State contracted for further services from CGI after October 1, 2017, but not extending beyond November 29, 2017. Carter described the need for further services as follows:
"[T]he emergency arose because the State has not been able since July 7 to end the risk of catastrophic failure in the STAARS system arising from the end of CGI's managed services by appropriate interaction between CGI and the new vendor for managed services replacing CGI [Infiniti]. The risk arises from the need to allow CGI to extract proprietary processes and trade secrets used during its provision of managed services, and enable the new vendor to become the service provider using its own knowledge, and without using CGI proprietary processes and trade secrets."
Supplement to Carter's petition, pp. 3-4. The need for further services by CGI meant that further payments would be made to CGI.
On December 18, 2017, Carter filed a second supplement to his petition, in which he stated:
"Defendant CGI is performing no work for the State of Alabama, and will receive no further payments for the enhancement of the CGI-licensed software known as STAARS, or for ongoing managed operational services of the STAARS system, or for the winding down process needed to conclude CGI work and transition to a new vendor. That work was completed on November 29, and the last payment related to it was made on or about December 14. Pursuant to a contract awarded by a competitive process, Infiniti is the new sole vendor providing software services for the State of Alabama."
Second supplement to Carter's petition, p. 1.
*118 According to Zeigler, in December 2015 he first learned that the amendments authorizing and implementing STAARS had not been competitively bid. On July 21, 2016, Zeigler filed this action in Montgomery Circuit Court against CGI, Carter, in his capacity as finance director, the governor, and the attorney general.[2] In his original complaint, Zeigler alleged that he "has standing to bring this action in his individual capacity pursuant to § 41-16-31, Code of Alabama 1975."
Section 41-16-31, Ala. Code 1975, provides:
"Any taxpayer of the area within the jurisdiction of the awarding authority and any bona fide unsuccessful bidder on a particular contract shall be empowered to bring a civil action in the appropriate court to enjoin execution of any contract entered into in violation of the provisions of this article."
The original complaint also referenced Zeigler, in his official capacity as State Auditor.
On August 16, 2016, Zeigler filed an amendment to his complaint in which he sought to delete "all references to this action being brought by the Plaintiff in his official capacity as State Auditor" and to "clarify that, from this point on, this action is being prosecuted by Zeigler in his individual capacity as a taxpayer of this state, and as class action on behalf of all other taxpayers of this state." Approximately a month later Zeigler filed a second amended complaint.
On April 18, 2017, Zeigler filed his "Third Amended Complaint," which is the operative complaint for these petitions. Zeigler's first count of the third amendment to the complaint sought a judgment declaring that the STAARS amendments were void pursuant to § 41-16-20 et seq., Ala. Code 1975 (hereinafter this section and associated Code sections -- including § 41-16-31 -- are referred to collectively as "the Competitive Bid Law"),[3] because the State did not engage in the competitive-bid process for the purchase, implementation, and maintenance of STAARS. Zeigler requested that the court "create a constructive trust for the benefit of taxpayers (and hence, the State of Alabama) consisting of all monies, profits and gains illegally obtained by CGI as a result of the STAARS" amendments as part of the relief in this count. Count two of that amended complaint sought a judgment declaring that the STAARS amendments violated § 29-2-41, Ala. Code 1975,[4] because the proposed amendments were not submitted to the Contract Review Permanent Legislative *119 Oversight Committee, and that, as a result, those amendments to the 1982 contract were void. Count three asserted a claim of unjust enrichment against CGI for retaining the payments it had received from the State for STAARS. Count four sought rescission of the contract created by the STAARS amendments and restitution to recover the payments made to CGI on behalf of Alabama taxpayers. Count five asserted a claim for money had and received. In Count six Zeigler sought a permanent injunction voiding the STAARS amendments, prohibiting any further performance as to those amendments, and preventing Carter from making any further payments to CGI. Count seven sought a preliminary injunction prohibiting Carter from making any further payments to CGI under the STAARS amendments during the pendency of the action.
On April 26, 2017, CGI filed a motion to dismiss the amended complaint. CGI contended, among other things, that the statute under which Zeigler claimed a right to bring his action, § 41-16-31, allowed for a remedy only of enjoining execution of a contract that violates the competitive-bid law, which meant that it did not permit claims of unjust enrichment or seeking restitution. CGI also contended that, under this Court's precedent, Zeigler lacked taxpayer standing to recover allegedly wrongfully expended funds. On April 29, 2017, Carter filed a motion to dismiss the amended complaint. Carter argued that Zeigler lacked standing because his original complaint failed to allege that he was a taxpayer or that his taxes were used to fund payments made pursuant to the STAARS amendments. Carter also contended that § 41-16-31 permits the filing of an action only before a contract has been signed, not after performance under the contract has commenced.
On May 31, 2017, the circuit court entered an order in which it dismissed counts two through seven of Zeigler's complaint, but it denied the motions to dismiss as to count one seeking a declaratory judgment relating to the alleged violation of the Competitive Bid Law. The circuit court also dismissed Zeigler's motion for class certification under Rule 23, Ala. R. Civ. P.
Thereafter, CGI and Carter filed separate petitions for a writ of mandamus contending that the circuit court erred in declining to dismiss Zeigler's remaining declaratory-judgment claim. The Court consolidated those petitions for the purpose of writing one opinion.
II. Standard of Review
" ' " 'The writ of mandamus is a drastic and extraordinary writ, to be "issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court." Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala. 1993) ; see also Ex parte Ziglar, 669 So.2d 133, 134 (Ala. 1995).' Ex parte Carter, [807 So.2d 534,] 536 [ (Ala. 2001) ]."
" ' Ex parte McWilliams, 812 So.2d 318, 321 (Ala. 2001).
" ' "Subject to certain narrow exceptions ..., we have held that, because an 'adequate remedy' exists by way of an appeal, the denial of a motion to dismiss or a motion for a summary judgment is not reviewable by petition for writ of mandamus." Ex parte Liberty Nat'l Life Ins. Co., 825 So.2d 758, 761-62 (Ala. 2002).'
*120 " Ex parte Kohlberg Kravis Roberts & Co., L.P., 78 So.3d 959, 965-66 (Ala. 2011)...."
Ex parte Rhodes, 144 So.3d 316, 317-18 (Ala. 2013). However, " 'the question of subject-matter jurisdiction is reviewable by a petition for a writ of mandamus.' " Ex parte Hill, 225 So.3d 56, 64 (Ala. 2016) (quoting Ex parte Flint Constr. Co., 775 So.2d 805, 808 (Ala. 2000) ). Both taxpayer standing and mootness pertain to subject-matter jurisdiction, see Morrow v. Bentley, 261 So.3d 278, 283-85 (Ala. 2017), and Wood v. State, 261 So.3d 322, 330-31 (Ala. 2017), respectively.
III. Analysis
CGI and Carter contend that two overarching problems plague the circuit court's refusal to dismiss Zeigler's remaining claim seeking a judgment declaring that the STAARS amendments violated the Competitive Bid Law. First, Carter contends, for a variety of reasons, that Zeigler lacks taxpayer standing to bring this action. Second, both CGI and Carter contend that the action is moot because the STAARS amendments have been fully performed. Because we agree with the latter contention regarding the mootness of this action, we pretermit discussion of whether Zeigler lacks taxpayer standing.
Both Carter and CGI contend that Zeigler's action was due to be dismissed by the circuit court in its entirety as moot because performance under the STAARS amendments has been completed. The March 31, 2017, letter agreement indicated that all "winding down" of responsibilities as to the STAARS amendments was to conclude on September 30, 2017. Through supplements submitted to this Court while these petitions have been pending, which Zeigler has not contested, Carter has informed this Court (1) that a further professional-services contract was entered into between the State and CGI that would last 60 days beyond the original end date of September 30, 2017; (2) that work was completed under that contract on November 29, 2017; (3) that the final payment to CGI was made on December 14, 2017; and (4) that CGI is performing no further work for the State as to STAARS and the services it formerly performed are now being handled by a new service provider.
The petitioners note that, although Zeigler initially sought a preliminary injunction in this action, the circuit court dismissed that request and never granted any injunction. As a result, CGI continued its performance under the STAARS amendments as litigation in this case unfolded, and the State paid CGI for the services remaining under its contract with CGI, including the services provided under the STAARS amendments. The petitioners conclude: "Now that the STAARS amendments have been fully performed ..., the question whether they were validly entered will be purely academic and not within the Court's authority to decide." Carter's petition, pp. 25-26.
Zeigler counters that this case is not moot because, he argues, a contract that is declared to be invalid under the Competitive Bid Law is void. See § 41-16-21(c), Ala. Code 1975 (stating that "[c]ontracts entered into in violation of this article shall be void"). "The issue here is whether the STAARS [amendments were] void when entered into. The determination of that issue has substantial significance for the rights and liabilities of the parties, including, among other things, [Zeigler's] pending claim for restitution." Zeigler's brief, pp. 29-30. Indeed, Zeigler relies heavily on the alleged right to restitution based on the amendments being void.
Zeigler cites general statements of law to the effect that the power to void a *121 contract necessarily includes the power to obtain restitution. See, e.g., Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis, 444 U.S. 11, 18, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979) ("A person with the power to void a contract ordinarily may resort to a court to have the contract rescinded and to obtain restitution of consideration paid."). It is telling, however, that the only Alabama case Zeigler cites with regard to the Competitive Bid Law in this regard is State ex rel. Russell County v. Fourth National Bank of Columbus, Georgia, 270 Ala. 135, 117 So.2d 145 (1959), a case in which the State instituted suit on behalf of Russell County after Russell County paid for services under a contract it had entered into in violation of a pertinent bid law. In that case, this Court observed:
"The enforcement of a contract for the construction of roads entered into without a compliance with the provisions of § 54, Title 23, [Ala. Code 1940,] may be enjoined.
"But we are not here concerned with an effort to enjoin the execution or enforcement of a contract.
"Here the roads have been constructed. The contractors have been paid. For aught appearing in the bill, the roads were properly built and the contractors received no more than the reasonable value of the services, materials and labor furnished."
270 Ala. at 145, 117 So.2d at 153 (citations omitted). The Court continued:
"There are cases to the effect that even though the contract for public improvements has been completed, if the contract was made in violation of a law providing for the letting of contracts to the lowest bidder, a suit may be maintained to restrain the paying out of public monies upon such contracts.
"Other cases hold that under such circumstances the monies paid out may be recovered.
"....
"The prevailing rule may be that where there has been a failure to comply with a competitive bid statute, there can be no recovery by a contractor or a furnisher of supplies or materials to a public agency, either on the contract or on a theory of implied contract or quantum meruit, or upon a basis of estoppel or upon the doctrine of unjust enrichment or upon any other equitable ground or consideration.
"However, other cases have allowed recovery on implied contract or quantum meruit where the services, labor or material have been performed and accepted by the public agency notwithstanding noncompliance with a statute requiring that contracts should be let only after competitive bidding.
"We are of the opinion that the rule of the cases last cited above is in accord with the rule of our cases which have treated generally with the question as to whether recovery may be had from a city or county in an action in quantum meruit for service performed or material furnished.
"In summary, we find that the Alabama law pertinent to this type of case is that where the contract was not within the corporate power, expressly prohibited by law, or violative of public policy, no recovery may be had either on express contract or quantum meruit.
"But where the power to contract lies within the competence of the city or county, and there has been an irregular exercise of that power, recovery [by the contractor] in quantum meruit may be had although the express contract is void.
*122 "The general power to construct and maintain roads was within the competence of the County Commission for Russell County. There was an irregular exercise of that power which under our cases would not defeat recovery in quantum meruit for services and material furnished where the transaction was made in good faith. As we have heretofore indicated, there is no averment of fraud, collusion, peculation or improvidence.
"If the contractors could have recovered in quantum meruit for the reasonable value of the labor and materials furnished by them, as we have indicated, it follows that the County cannot succeed in this suit to recover a sum equal to the amount of money paid to the contractors."
270 Ala. at 145-46, 117 So.2d at 153-54 (citations omitted; emphasis added). We do not find the equitable principles discussed in State ex rel. Russell County to be helpful to Ziegler's argument that he, as a taxpayer, may prosecute an action on behalf of the State for restitution, particularly where it appears the services contracted for are "within the competence of" the State and have been performed by the contractor; the contractor has been paid; and there is no allegation of "fraud, collusion, peculation [stealing] or improvidence" as to the transaction at issue.[5]
More importantly, however, § 41-16-31 authorizes a taxpayer action for injunctive relief only for violations of the Competitive Bid Law. As this Court noted in Crest Construction Corp. v. Shelby County Board of Education, 612 So.2d 425, 431 (Ala. 1992) :
"The legislature has provided a remedy to prevent an agency from violating the provisions of the Competitive Bid Law. A taxpayer or a 'bona fide unsuccessful bidder' may sue 'to enjoin execution of any contract entered into in violation of the provisions of [Article 3, § 41-16-50 through 41-16-63].' Ala. Code 1975, § 41-16-61. This language is unambiguous."
The Crest Court further noted that the remedy the legislature provided in the Competitive Bid Law is "a limited one." 612 So.2d at 432 (also referencing the principle of "expressio unius est exclusio alterius," " 'the expression of one thing is the exclusion of another.' Black's Law Dictionary 521 (6th ed. 1990)." 612 So.2d at 432 text and n.2.). Thus, the Court has unequivocally held that "nothing in the legislative history of § 41-16-31 nor in the cases interpreting that statute ... allows an unsuccessful bidder to sue for monetary damages." Jenkins, Weber & Assocs. v. Hewitt, 565 So.2d 616, 618 (Ala. 1990). In explaining the rationale for this holding, the Jenkins Court noted:
"This Court held as follows in City of Montgomery v. Brendle Fire Equipment, Inc., 291 Ala. 216, 220, 279 So.2d 480, 484 (1973), interpreting Ala. Code 1940, Title 55, § 515, the predecessor to § 41-16-31 :
" 'This court finds the language of section 515 to be unambiguous, and under such circumstances the "expressed intent must be given effect, and there is no room for construction." Under the statutory language it appears that the City's interpretation is correct. The statute makes available the equitable remedy of an injunction on a "particular contract." This wording does not contemplate enjoining future *123 contractual arrangements. Also, the statute provides for enjoining the "execution" of any contract which is violative of Chapter 22, not the formation of contracts to be made in the future which may run afoul of Chapter 22.'
"(Citations omitted, emphasis original.) City of Montgomery established the remedy pursuant to Title 55, § 515, as one for injunctive relief."
565 So.2d at 617 (final emphasis added).
It is true that the rationale in cases such as Crest and Jenkins could be explained by the fact that "[t]he Competitive Bid Law was enacted for the benefit of the public, not for the benefit of the unsuccessful bidder." TFT, Inc. v. Warning Sys., Inc., 751 So.2d 1238, 1247 (Ala. 1999). But the fact remains that the only relief authorized under § 41-16-31 is "to enjoin execution of any contract entered into in violation of the provisions of this article," whether the complaining party is an unsuccessful bidder or a taxpayer. In keeping with this language, our cases repeatedly have emphasized a taxpayer's right to stop the unlawful expenditure of taxpayer money but have not mentioned a taxpayer's having a right to recover funds already expended by the State for services rendered. See, e.g., Ingle v. Adkins, 256 So.3d 62, 71 (Ala. 2017) ("[T]his Court has repeatedly recognized that a taxpayer has standing to seek an injunction against public officials to prevent illegal payments from public funds." (emphasis added) ); Zeigler v. Baker, 344 So.2d 761, 764 (Ala. 1977) ("The right of a taxpayer to challenge the unlawful disbursement of state funds ... is unquestioned." (first emphasis added) ); Goode v. Tyler, 237 Ala. 106, 109, 186 So. 129, 131 (1939) ("[T]his Court is committed to the doctrine that a taxpayer may maintain a suit in equity to restrain a state officer in the unlawful disbursement of state funds." (emphasis added) ); and Turnipseed v. Blan, 226 Ala. 549, 552, 148 So. 116, 118 (1933) (recognizing "the right of a taxpayer to maintain a suit in equity to restrain an officer of a city or county from disbursing funds without statutory authority or under an unconstitutional statute" (emphasis added) ). The legislature has considered the issue whether taxpayers should have a legal remedy for an alleged violation of the Competitive Bid Law by the State, and the legislature has provided the taxpayers with a specific remedy for such violations. This Court has no authority to create an additional taxpayer remedy.
Based on the foregoing, we conclude that injunctive relief was the only remedy potentially available to Zeigler, as a taxpayer, for the alleged violation of the Competitive Bid Law. However, because the 1982 contract, including the STAARS amendments, has been fully performed, injunctive relief is no longer available, and any declaration that the State violated the Competitive Bid Law would serve no purpose. As this Court has held, a matter is moot where "there is no effective remedy upon which relief can be granted" based on subsequent events. AIRCO, Inc. v. Alabama Pub. Serv. Comm'n, 360 So.2d 970, 971 (Ala. 1978). "To render an opinion based solely upon ... alleged improper actions (without seeking a remedy therefrom) ... would be to render impermissible advisory opinions." Id. Moreover, "[a]n action that originally was based upon a justiciable controversy cannot be maintained on appeal if the questions raised in it have become moot by subsequent acts or events." Case v. Alabama State Bar, 939 So.2d 881, 884 (Ala. 2006). See also Underwood v. Alabama State Bd. of Educ., 39 So.3d 120, 127 (Ala. 2009) (" 'This Court has often said that, as a general rule, it *124 will not decide questions after a decision has become useless or moot.' " (quoting Arrington v. State ex rel. Parsons, 422 So.2d 759, 760 (Ala. 1982) ) ).
Because performance under the 1982 contract, including the STAARS amendments, has been completed, there is no performance to enjoin, and there is no further remedy available to Zeigler for the alleged violation of the Competitive Bid Law. Therefore, we agree with the petitioners that Zeigler's claims are now moot.
IV. Conclusion
Based on the foregoing, we grant the petitions and direct the circuit court to enter an order dismissing the action.
1160887-PETITION GRANTED; WRIT ISSUED.
1160897-PETITION GRANTED; WRIT ISSUED.
Stuart, C.J., and Bolin, Parker, Shaw, Wise, and Sellers, JJ., concur.
Bryan, J., concurs in the result.
Main, J., recuses himself.

At the time he filed the underlying action, Zeigler was State Auditor for Alabama, a position he holds as of the date of this opinion.

The governor and the attorney general were subsequently dismissed as defendants.

Section 41-16-20, Ala. Code 1975, provides, in part:
"(a) With the exception of contracts for public works whose competitive bidding requirements are governed exclusively by Title 39, all contracts of whatever nature for labor, services, work, or for the purchase or lease of materials, equipment, supplies, other personal property or other nonprofessional services, involving fifteen thousand dollars ($15,000) or more, made by or on behalf of any state department, board, bureau, commission, committee, institution, corporation, authority, or office shall, except as otherwise provided in this article, be let by free and open competitive bidding, on sealed bids, to the lowest responsible bidder."

Section 29-2-41, Ala. Code 1975, states, in part:
"Each state department entering into a contract to be paid out of appropriated funds, federal or state, on a state warrant which is notified by the committee is required to submit to the committee any proposed contract for personal or professional services. Each contract shall be accompanied by an itemization of the total cost estimate of the contract."

We are not to be understood as implying that a taxpayer could prosecute an action on behalf of the State for restitution where such allegations are made. That circumstance is not before us.